Sunbury,
Thursday,
June 14.

## Lessee of LAZARUS and Others *against* BRYSON.

As between a debtor or his representatives and the sheriff, who sells the debtor's land by execution, a purchase by the sheriff, or by any one in trust for the sheriff, without the debtor's consent, is void; but if the debtor consented to such a purchase, his representatives cannot impeach it; and even if he did not know or consent, the sale cannot be disturbed to the prejudice of a subsequent *bona fide* purchaser without notice. There is no difference between a sheriff and a common trustee, as to the right of either to become the purchaser at a sale of the property under his control, or as to the effect of such a purchase upon subsequent purchasers without notice.

THIS was an appeal from the decision of his honour Judge *Brackenridge* at a Circuit Court for *Northumberland* in *May* 1807.

The lessors of the plaintiff were the children and heirs of *Frederick Lazarus* deceased, and in that character claimed the land in dispute.

The defendant made title under a judgment against *Frederick Lazarus* in favour of *John Field* and son. The land was sold under a *venditioni exponas* upon this judgment, and conveyed by *Robert Irwin* the sheriff to *Jesse Moore* the purchaser, by deed dated the 3d of *May* 1800. In the autumn of the same year *Frederick Lazarus* died. On the 28th of *March* 1801 *Moore* conveyed the land to *Robert Irwin* for 298*l.* the same price at which he had bought it at sheriff's sale; and on the 21st *September* 1801, *Irwin* conveyed to the defendant for 856*l.* 0*s.* 7*d.*

The plaintiff endeavoured to impeach this title by offering evidence to shew that *Moore* was a nominal purchaser, and that he had bought in trust for the sheriff, or in trust as to all the profits beyond the purchase money, to divide the same between *Lazarus*, the sheriff, and himself. Upon this subject a great deal of contradictory testimony was given; but there was nothing to bring home to the defendant a knowledge of any collusion between the sheriff, *Moore*, and *Lazarus*, unless it could be inferred from *Moore's* being known as the clerk of the sheriff, and from his conveying the land to him for the price he had himself given for it.

His honour charged the jury, that the evidence greatly preponderated in favour of there having been a connexion, be-

tween *Lazarus*, the sheriff, and *Moore*, as to the profits, and that in that case he was clearly of opinion that the children of *Lazarus*, who were in point of law, *Lazarus* himself, could not impeach the sale. But that if *Lazarus* was not privy to the interest of the sheriff, still, as the defendant was a *bona fide* purchaser for a valuable consideration, and without notice of any secret agreement between *Moore* and the sheriff, he could not be affected by it. His honour therefore instructed the jury to find for the defendant.

The jury however found for the plaintiff, and Judge *Brackenridge* overruled a motion for a new trial, in order that the defendant might bring the point before this court by appeal.

*Kidd* and *Duncan* for the defendant argued for a new trial upon the ground that the verdict was against law, and the explicit charge of the court.

If *Lazarus* was to participate with the sheriff in *Moore's* purchase, then the purchase was indefeasible by him or his heir, notwithstanding it might have impugned a general principle of law. He must be considered in the light of a promoter of the purchase, as constructively encouraging the defendant to buy, and therefore concluded in equity from objecting to the title. *Sugden* 480, 476. *Berrisford* v. *Milward. (a)*

But if *Lazarus* was ignorant, the defendant was a *bona fide* purchaser for a valuable consideration, and without notice, and therefore could not be affected by any misconduct of the sheriff, nor by any trust which such misconduct may have raised in favour of *Lazarus*, as between him and the sheriff. The title of the defendant has the greatest respect shewn to it in equity. Neither heir, nor orphan, nor creditor, is assisted in Chancery to impeach such a title. Instead of disarming him, that court will protect him, unless the claimant makes out a clear case of notice. *Sugden* 476. *Jerrard* v. *Saunders (b)*, *Collet* v. *De Gols (c)*, *Wilker* v. *Bodington (d)*; it has always been careful not to impeach such purchasers by presumptive notice. *Hitchcox* v. *Sedgwick (e)*. The question uniformly is, had the purchaser notice of the original fraud or trust? and if he had not, he holds his estate discharged from it. 2 *Fonbl.* 148. *Graff* v. *Smith's administrators (f)*.

1810.

Lessee of
LAZARUS
*v.*
BRYSON.

---

| | | |
|---|---|---|
| (a) 2 *Atk.* 49. | (c) *Cas. tem. Talb.* 67. | (e) 2 *Vern.* 159. |
| (b) 2 *Ves. jr.* 458. | (d) 2 *Vern.* 599. | (f) 1 *Dall.* 485. |

Lessee of
LAZARUS
*v.*
BRYSON.

The plaintiff at all events is not at present prepared to contest the defendant's title; he is bound in the first instance to pay all that the sheriff paid, and all subsequent improvements. *Sugden* 402, 407.

*Evans* and *Hall*, for the plaintiff, answered that if this could be considered only as the common case of trustee and *cestui que trust*, they would not have troubled the court with an argument. But they thought it was to be governed by different principles.

It was a case they said, in which a highly favoured class of persons was interested, the creditors of *Lazarus*, who would obtain the benefit of the verdict, if it should be confirmed; and the claim was therefore not to be regarded with prejudice, as though the heir of *Lazarus* were impeaching the act of his ancestor for his own benefit. But whatever might be the favour with which the case was to be regarded, it came to a question of law, whether the sale by the sheriff passed any estate; and they argued that it did not for two reasons:

In the first place, the sheriff must be considered as having been himself the purchaser, the interposition of *Moore's* name being nothing. Now the sheriff was incompetent to buy at his own sale. He wanted legal capacity to become a purchaser, and the sale was a nullity. Had an application been made to the court, they would have prevented an acknowledgment of the deed, because it could pass nothing; and it is to be deemed equally invalid now, for the same reason. The sheriff is not to be considered as a trustee who buys the land which he himself held in trust. Consent might in such a case give the trustee ability to buy. He is rendered incapable only for the sake of the *cestui que trust*, and if the latter consents, the impediment is removed. But the sheriff is the agent of the law, and of creditors. The consent of the debtor is of no effect in communicating a power, which the law has inhibited for the sake of others beside the debtor, and therefore the case is to be considered as though no consent had been given. The sale would then have been void, and the deed would have passed nothing. This clears the controversy from the question of notice.

But in the next place, the evidence presented the question

of fraud between these parties to diminish the product of the sale, and the verdict of the jury has decided that there was fraud. This, according to *The Lessee of Weitzell* v. *Fry* (*a*), also vitiated the sale. Fraud indeed vitiates every transaction; and the only thing necessary to affect the defendant's title with it, was notice. Now whatever is sufficient to put the purchaser upon inquiry, is good notice in equity; *Sugden* 498, 499; and certainly the well known connexion between *Moore* and the sheriff, the identity of the consideration for the deed from the sheriff to *Moore* and from *Moore* back to the sheriff, with the large increase of it upon conveying to the defendant a few months afterwards, were sufficient for this purpose.

TILGHMAN C. J. The lessors of the plaintiff are the children and heirs of *Frederick Lazarus* deceased, by descent from whom they claim the land in dispute. The defendant makes title under a judgment for *John Field* and son against the said *Frederick Lazarus*. The land was sold under a *vend. exp.* and conveyed to *Jesse Moore* esquire the purchaser, by deed from *Robert Irwin* sheriff of the county of *Northumberland*, on the 3d of *May* 1800. In the autumn of the same year *Frederick Lazarus* died. *Jesse Moore* conveyed the land to *Robert Irwin* on the 28th of *March* 1801 for 298*l.* the same price at which he bought it, and *Irwin* conveyed it to the defendant on the 21st of *September* 1801, for 856*l.* 0*s.* 7*d.*

It was strongly urged at the trial, that all these conveyances were void, because *Moore* was the purchaser at the sheriff's sale, on a secret trust for the sheriff himself. On the other hand, it was denied that *Moore* purchased in trust for the sheriff; and it was contended that if he did, yet the defendant, being a purchaser for valuable consideration without notice, should hold the land against the children, or even against the creditors of *Frederick Lazarus*.

The evidence was various, and in some respects contradictory; but it may be inferred from the whole testimony, either that *Moore* purchased on his own account, or on an agreement between *Lazarus*, the sheriff, and himself, that the land should

(*a*) 4 *Dall.* 218.

VOL. III.                    H

*margin note:*

1810.

Lessee of
LAZARUS
*v.*
BRYSON.

be resold by him, and the profit arising on the resale, equally divided among all three; or in trust for the sheriff in whole or in part. I will consider the case under those three points of view.

1. If *Moore* purchased on his *own* account, there can be no question but the defendant's title is good; because a sale made by *Moore* to the sheriff, from whom the defendant purchased, would be a transaction perfectly fair and legal.

2. But suppose there was an agreement that *Moore* should sell the land, and divide the profits equally between *Lazarus*, the sheriff, and himself. This would have been an improper combination; but with what face could *Lazarus*, or his children claiming under him, impeach the sale to the defendant, a purchaser for valuable consideration, unconnected with them, and ignorant of their secret contract? In such case, a sale to a third person would be necessary to effect their purpose; and yet the plaintiffs come forward to defeat the agreement of their ancestor. Instead of avoiding the sale, they ought to consider it as valid, and call on *Irwin* for one third of the profits.

3. The only serious question which can arise in this cause, is upon the supposition, that *Moore* purchased either wholly in trust for the sheriff, or in trust for the sheriff as to an undivided moiety. In such case, if the dispute was between the children of *Lazarus* and the sheriff, I should have no hesitation in saying that the plaintiffs would be intitled to recover; because so far as the sheriff himself was concerned, or so far as *Moore* his partner was concerned, I should consider the sale as void. The law has intrusted the sheriff with the important charge of selling the property of debtors on executions; and it will not endure that the same person should be both seller and purchaser. Not but that in many cases, the sale might in fact be fair and honourable; but from a principle of the soundest policy, from the temptation to dishonest practices, to which the officer would be exposed, and from the difficulty of detecting him, where he acted fraudulently. I consider this principle as settled, and indeed it has not been questioned by the counsel for the defendant. But the case of the defendant stands on a very different footing from that of the sheriff. There is no proof, that he had *actual* notice of the

sheriff being in any manner concerned in *Moore's* purchase.
Nor do I think that the circumstance of *Moore* having made
a conveyance to the sheriff, can be considered as legal or con-
structive notice. It might very well have happened, that the
sheriff purchased of *Moore*, without having been any way con-
cerned in the purchase made by *Moore* at the public sale. It
is a circumstance however, which the jury might take into
consideration, on a question whether the defendant had ac-
tual notice.

The plaintiff's counsel have endeavoured to distinguish
this case from that of a trustee, who sells land in pursuance
of his trust, and becomes the purchaser at his own sale.
The sheriff, say they, was never trusted by *Lazarus*, but
derived his authority from the *law*. I cannot say, that I feel
the force of this distinction. With respect to a purchase made
by a sheriff, or a trustee, the law is confessed to be the same.
In both cases, the sale would be avoided. And with a view
to third persons, who are purchasers for valuable considera-
tion without notice, I see no reason for any difference. If the
land is resold for a profit, the injured party in either case may
have his remedy. The *cestui que trust* looks to his trustee.
The debtor, whose land has been sold by execution, may look
to the sheriff. There is as much reason to protect the innocent
purchaser in one case, as in the other. The case of *Weitzell
et al.* v. *Fry* was cited; 4 *Dall.* 218; but it is not to the pur-
pose. It will be found, that this point did not occur in that
case. If the matter is considered on grounds of public conve-
nience, we shall find no cause for a distinction. It is for the
interest of the public, that land should sell for its fair value,
and that honest purchasers, who have been guilty of no im-
prudence, should not be disturbed. Land which had been
once exposed to sale by the sheriff, would be of little value, if
subsequent purchasers could be affected by secret transac-
tions, of which they had no knowledge. The consequence
would be, that land would bring very little at a sheriff's sale,
and thus the debtors, the very persons whom it is proposed
to benefit by the distinction now set up, would be its victims.

This was the opinion of the judge, before whom the cause
was tried in the Circuit Court, and I fully agree with him.
The verdict was directly in the face of his charge in matter

of *law*. It is true he refused a new trial, but with a view, as he has declared, that the law might be settled in this court. I am therefore of opinion, that a new trial should be granted.

YEATES J. concurred.

BRACKENRIDGE J. On the trial of this cause I assumed it as a fact that the sale was made not only with the privity and consent of *Lazarus*, the judgment debtor, but that *Lazarus* was interested in the purchase, and was to share in the profits that might be made by it. This would appear from the testimony of Col. *Bull*, that *Lazarus* said he would give up his title papers to any clever fellow that would purchase, and from his giving up the title papers to *Moore* the nominal purchaser; and also from his declaration to *Simon Snyder*, that he was interested in the profits to be made out of the sale, which goes towards supporting what was said by the sheriff himself to *Snyder* before, that *Lazarus* was to have 100*l.* of the profits. The dissatisfaction of *Lazarus* with the sheriff after the sale, from his saying to *Snyder* that if he had expected such treatment he would have withheld his papers, would seem to carry with it evidence that some misunderstanding had arisen about dividing the profits.

Had the sheriff himself been a bidder at the sale, had the crier knocked down the estate to the sheriff, it would have been the same as the sheriff knocking down to himself; for the crier is the sheriff as to the act of crying and knocking down, being his agent. But a deed by *Robert Irwin* sheriff to *Robert Irwin* could not be made; and on the face of it would be void. The official capacity could not be separated from the personal, in the same act. The consent of the debtor could not make it good. The sheriff could not sell, nor execute a conveyance to himself.

But this inconsistency in the nature of the thing does not exist where the property is struck down to a third person, and the deed executed to him, even though the sheriff is the real purchaser. But the policy of the law will interfere here, and render the act voidable according to circumstances. If it is with the knowledge of the debtor whose estate is sold, and the sale is honest as to him, I do not know that *he ought to be suf-*

*fered to avoid it.* I believe if the fact came to the knowledge of the court before the acknowledgment of the deed, they would be justifiable in refusing to take it. But on an ejectment by the debtor himself, as is the case here, it would seem to me he ought not to be heard. The act which he wishes to avoid, was an immorality in which he participated. It is in this sense that the maxim of the civil law is to be understood. *Nemo allegans turpitudinem suam audiendus est.* His allegation is, I had the title; it was sold with my privity *in fraudem legis;* nominally to a third person, but in fact to the sheriff himself; and therefore I avoid it.

But shall he be heard alleging this in avoidance of the deed, after a conveyance under the sale by the sheriff to an innocent purchaser? It is not alleged that the defendant in this case had any notice that the sale was but nominally to *Moore,* and really to the sheriff; unless *such notice* as seeing the conveyance from *Moore* to the sheriff made a year afterwards, can be supposed to have given him. This conveyance might be made on other considerations than the sheriff being the real purchaser. He might have taken the word of the purchaser for the purchase money and have acknowledged the deed without having actually received it; or the purchaser might have alleged unfairness in the sheriff in his representation to induce a purchase at a high value for the interest of the debtor; and to save himself from loss in the one case or blame in the other, the sheriff might be willing to take the property himself; or he might afterwards, *bona fide*, and without having had any participation in the first sale, become a purchaser. It could not therefore necessarily be inferred from the conveyances themselves, that the sheriff was the real purchaser at the sale by the sheriff. All question of notice therefore to the present defendant, is out of the case. It is constructive notice only that can be alleged; and this, in my opinion, is not constructive notice to him. But even supposing him to have had notice of the circumstances under which this sale was made, and that the sheriff had been the real purchaser, he could be in no worse situation than the sheriff and the debtor himself, and they could not recover possession against their own act; *in pari delicto melior est conditio possidentis.*

1810.

Lessee of
LAZARUS
*v.*
BRYSON.

Had the creditor under whose judgment the estate was sold, or any other judgment creditor, come forward to have the sale set aside before deed acknowledged or after, but before a transfer to an innocent purchaser, I have no doubt it could have been set aside; but I think that after a transfer it could not; and the judgment creditor in the execution would be left to his remedy against the sheriff, for the remainder of his debt, if the property sold did not bring the whole. Or if it did bring the whole, other judgment creditors might have a remedy against him, for the fraud upon them as far as he made profit by it, as for money had and received to their use. But I do not think that a person wholly innocent, and having in appearance a conveyance sanctioned by the formalities of the law, ought to be affected. I went so far at the trial as to direct the jury to find for the defendant; but what might be the case on a resale by the judgment creditors, and an ejectment brought on that, I did not say. I am now of opinion that under the circumstances of this case, the law will protect the defendant against the judgment creditor or judgment creditors, subsequent to the judgment on which the estate was sold. These are the deductions of my own reason on weighing this case on grounds of moral obligation, and pursuing it in its bearings, on grounds of legal policy. But on looking into the books where they touch on this subject, directly or by analogy, I find confirmation. I have consulted chiefly a late writer, *Sugden's Law of Vendors*, and the authorities to which he refers. Under the head of persons incapable of purchasing, *chap.* 14, *p.* 391, he lays it down broad enough as a general proposition, that trustees, agents, auctioneers &c. *except under restrictions*, are incapable of purchasing. The characters are inconsistent. *Emptor emit quam minimo potest; venditor vendit quam maximo potest.* The purchase is not permitted in any case *however honest the circumstances;* the general interests of justice requiring it to be destroyed in every instance, as no court is equal to the examination and ascertainment of the truth in much the greater number of cases.

But in the late case of *Coles* v. *Trecothick,* 9 *Vez. jun.* 234, the trustee's father, for whom the trustee in this case acted as agent, purchased an estate; and as the *cestui que trust* had full knowledge of the value, and consented to the sale, and no

fraud was proved, a performance was decreed, though the *cestui que trust* had since been offered 5000*l.* more for the estate.

In *Welpdale* v. *Cokeson,* 1 *Vez.* 9., 5 *Vez.jr.* 682 *n.*, where a trustee for creditors purchased part of the estate himself, lord *Hardwicke* said, if a majority of the creditors agreed to allow it, he should not be afraid of making a precedent. Lord *Eldon* doubted the authority of this case, as to the consent of the majority, *unless all consented,* which implies that the consent of all would do; such a sale therefore would not be considered *absolutely* void.

In *Crow* v. *Ballard,* 6 *Vez. jr.* 628., 3 *Bro. Ch. C.* 117, where an agent for the sale of a legacy purchased it himself in the name of a trustee, lord *Thurlow* said that alone was sufficient to set aside the transaction. It was impossible he said at any rate, that the person employed to sell, could be permitted to buy. Even if this was done with *the knowledge of the party selling, it could not be supported.* But the rule as laid down by lord *Thurlow,* says the writer, clearly cannot be supported. It may be doubted whether he ever laid down such a rule, as no mention is made of it in the report of the same case, by that able and accurate reporter *Vez. jun. vol.* i. *p.* 215. For it must not be understood that a trustee cannot buy from his *cestui que trust;* the rule is that he cannot buy from himself. 10 *Vez.* 426. If therefore the *cestui que trust* clearly discharges the trustee from the trust, and considers him as an indifferent person, there is no rule which says he may not purchase of him, although the court will look with a very jealous eye on a transaction of that nature; and, to be supported, it must clearly appear that the purchaser at the time of the purchase, had shaken off his confidential character, by the consent of the *cestui que trust* freely given after full information, and bargained for the right to purchase. 8 *Vez. jun.* 553. And the same circumstances that will authorize a trustee to contract for himself, will enable him to purchase as the agent of another. 9 *Vez. jun.* 248. The writer goes on in page 401, to consider what remedy the *cestui que trust* has, where his trustee has purchased the trust estate in a manner not authorized by the rules of court. He says " *if the trustee has not sold the estate,* " the *cestui que trust* may insist on the purchase being

" avoided, and may reclaim his estate; for it need not be " shewn that the trustee has made an advantage." 6 *Vez. jun.* 627., 4 *Vez. jun.* 411., 10 *Vez. jun.* 423., 8 *Vez. jun.* 385—393.

If the trustee has actually sold the estate, the *cestui que trust* may compel the trustee to pay him what he may have received above the original purchase money. 2 *Bro. C. C.* 400., 5 *Vez. jun.* 423.

Where a trustee buys the trust estate at a fair price, the sale is seldom called in question unless he afterwards sell it to advantage; and then the *cestui que trust* is of course only desirous that the money gained by the trustee on the resale, should be paid to him.

These authorities can apply only on considering the sheriff as a trustee, or an agent to execute a trust. It behoves us therefore to inquire, for whom is he a trustee or agent. He is the trustee or agent of the law for all the purposes for which he is employed, and all having an interest in the sale of the estate. These are the judgment debtor himself, and the judgment creditor or creditors, as well as the purchaser. It is implied in the trust and enjoined in the agency, that the most will be made of the property to be sold, and this for the benefit of the debtor, as of all who are intitled in law or equity to look to this fund for payment. It is a fraud upon one or all of these, if the most is not made of it; and the sale is voidable at the instance of such of them as are injured by an under sale; but not, I conceive, at the instance of such as have been parties to the transaction for the purpose of defrauding the rest, *unless it be for the sake of others.* And in the case of purchases without notice I would not think it voidable by either, but the remedy to be against the sheriff; and this would seem to be the doctrine of Chancery, from the authorities cited by the same writer, *Sugden* 401, where he says that a purchaser of a trust estate from a trustee who had previously sold to himself, is seldom implicated in the suit; but it seems clear that a person purchasing with *notice* of the previous transaction, would be liable to the same *equity* as the trustee was subject to. 10 *Vez. jun.* 123. By implication a person purchasing without notice could not be affected. A different rule it is said, says the writer, would blow up like

gunpowder this branch of equitable jurisdiction. And I might add that a different rule would blow up all sheriffs' sales; for it would be impossible for a purchaser at a sheriff's sale to know whether there might not be some unknown collusion with the debtor, by the officer, and which even after a deed acknowledged to him might avoid the sale as fraudulent *ab initio;* but more especially, if this was allowed against a purchaser of a purchaser at a sheriff's sale, who had no knowledge of the fraud.

These were my impressions on the trial as far as I could make up my mind from a knowledge of general principles, or from my own reason, viewing the case in its consequences, and on grounds of legal policy, founded in public convenience or private justice. But I will not say that I did or could communicate these impressions to the jury in their full extent. I can only say that I had the substance of them in my mind, and did direct the jury in favour of the defendant; and it was matter of surprise to me that they found otherwise. The motion for a new trial was overruled *pro forma* only, and to give the opportunity of taking the opinion of the court in bank; that is to say, from my overruling the motion it is not to be inferred, that I would have refused a new trial, had I not thought this the speediest way of having the opinion of the court on the points of law that arise in the case. I now give these as my sentiments; not as giving an opinion in this court, but as reporting my opinion on the case, in order to repel the implication from my not granting a new trial, that I approved of the verdict; or that it was agreeable to the sentiments I delivered to the jury, so far at least as respects the plaintiffs in the ejectment tried; for I consider the representative of *Lazarus,* as *Lazarus* himself, and in no better equity to recover.

New trial awarded.