Harrison and others *vs.* McHenry.

No. 33.—KINCHEN HARRISON *et al.* plaintiffs in error, *vs.* ENOS McHENRY, defendant in error.

[1.] A Sheriff cannot purchase at his own sale, neither for himself nor as agent for another, but such purchase is void.

[2.] Though a subsequent ratification by the principal will confirm an assumed agency, not so if the agency be in itself illegal.

[3.] The lien of a judgment no longer attaches to property sold by the Sheriff under a younger judgment. The remedy of the creditor is to claim the fund.

Ejectment, in Union Superior Court. Tried, September Term, 1850, before Judge HOOPER.

Enos McHenry had caused a *fi. fa.* in his own favor, against Kinchen Harrison and others, to be levied on a lot of land, and constituted Henry Harrison his agent to bid for it at the sale. Harrison did not bid, but requested Roach, the Sheriff who sold the land, to bid for it. Roach bid it off, and afterward conveyed it to McHenry, under which deed plaintiff claimed to recover.

The land was subsequently levied on and sold by virtue of sundry Justices' Court *fi. fas.* against said Harrison and others, of older date than McHenry's *fi. fa.* and was bid off by one of the defendants, under which last sale and the Sheriff's deed thereon, defendants claimed.

Defendants insisted that the first sale was void, because the Sheriff had bought at his own sale, and further, that Roach could not be considered as the agent of McHenry, because Harrison could not delegate his authority as agent, nor was it a case where an assumed agency could be subsequently confirmed.

Defendants also insisted, that the last sale was valid as against the first, being founded on an older *fi. fa.*

The Court ruled, that McHenry's title was good, and he recovered the premises, and defendants excepted to said ruling of the Court.

MARTIN and PEEPLES, for plaintiff in error.

W. H. UNDERWOOD, represented by HULL, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

The presiding Judge instructed the Jury, that if they believed that the Sheriff was the agent of the plaintiff, McHenry, at the time of the sale, and bid off the property for him as such agent, they would be authorized to find for the plaintiff.

[1.] The exception to this instruction makes the question, whether the Sheriff, at a sale under execution, conducted by himself, can act as the agent of an absent person in the purchase of the property.   It was assumed in the argument, and the assumption seems to me to be indispensable to the power claimed for the Sheriff in the instruction, that it is competent for him to make a valid purchase at his own sale.   If he can buy on his own account, it would seem that he can also purchase as agent for another; and if he cannot buy on his account, he cannot purchase as agent for another.   At least, some of the reasons which forbid his buying on his own account, equally forbid his acting as agent.   Trustees, generally, are unable to buy the property of their *cestui que trust.*   The purchase is not in their case void, *per se,* but the *cestui que trust* may come in, as a matter of right, and set it aside.   He may do this, whether the sale be *bona fide* or not.   His right to set it aside does not depend upon the fairness of the transaction.   The honesty of the trustee has nothing to do with it.   The object of the rule is to secure fidelity in the trustee to the interests committed to his hands.   To secure this, the law does not abrogate his purchase, because it was fraudulent and injurious to the rights and interests of the *cestui que trust,* but goes upon the idea, that he shall not be subjected to the temptation of violating his trust by committing a fraud.   It shields him from the temptation, by declaring him incapable of making a purchase which will bind those whom he represents; and it gives them the option of vacating or affirming the purchase, according as they may consider it their interest to do the one or the other.   This election the *cestui que trust* must make in a reasona-

ble time. He may affirm it, and then it becomes unimpeachable. A distinction was at one time sought to be made between a private sale and a sale at auction. The rule, however, is now well settled, as applying to both kinds of sale. Such is the law of this Court. See *Worthey et al. vs. Johnson et al.* 8 *Geo. R.* 241, 242, *and the authorities there referred to.* The whole subject is discussed by Chancellor *Kent*, in *Davore vs. Fanning et al.* in an opinion which is unsurpassed for its learning and ability, and in which it is settled that it makes no difference, in the application of the rule, that the sale was at public auction and *bona fide*, and for a fair price. 2 *Johns. Ch. R.* 252. Nor can there be a doubt about its application to Sheriffs. The Sheriff is a trustee for the defendant in execution, by virtue of his office. When personal property is seized in execution, he acquires a property in it. He can maintain *trover* for it, even against the defendant himself; and where real estate is levied upon, he acquires a qualified property in that. All of which he holds in character of trustee for the owner ; and being trustee, the obligations and disabilities of a trustee devolve upon him. 3 *Binn.* 54. 2 *Johns. Ch. R.* 252. 2 *Fonbl.* 447, *note.*

If the Sheriff be viewed in the light of a mere agent, he cannot purchase at his own sale. He is the agent of the defendant in execution, appointed by the law, for the purpose of selling his property to the best advantage and to the highest bidder. His principal is entitled to his best ability and his perfect integrity in the discharge of the duty which the laws devolve upon him. The law of agency is, that the principal bargains for the exercise of "the disinterested skill, diligence and zeal of the agent for his exclusive benefit." He can have no interest and do no act adverse to the interest of his employer, or incompatible with the application of his best skill, zeal and diligence to the promotion of that interest. The privilege to an agent of buying the property he is engaged to sell, is utterly incompatible with the obligations owing to his principal. The interest of the principal is that he obtain the highest price, and it is the duty of the agent to sell it for the highest price. It is the interest of the purchaser to buy at the lowest price, and he is presumed to bid with reference to

his interest. *Emptor emit, quam minimo potest ; venditor vendit quam maximo potest.* If, then, the Sheriff, who is the agent of the defendant, were permitted to purchase at his own sale, his duty to his principal and his own interest would stand in direct opposition. Either he must violate the duty which he owes to his principal, or exercise a virtue rare amongst men—that is, sacrifice his own interest to that of another. To avoid this collision of interest, and to prevent a temptation to infidelity in his trust, the law imposes upon him a positive prohibition. It is well settled, that an agent employed to sell, cannot himself become the purchaser; and an agent employed to buy, cannot himself become the seller. 1 *Paley on Agency, by Lloyd,* 33, 34, 37. 3 *Chitty on Com. and Manuf. ch.* 3, *p.* 216, 217. 1 *Livermore on Agency, ch.* 8, §6, *p.* 416 *to* 433. 1 *Russ. & M.* 53. *S. C.* 2 *M. & K.* 819. 6 *Pick.* 196. 5 *Paige,* 650. 13 *Vesey,* 103. 2 *M. & Craig.* 374. .6 *Lou. R.* 407. *Story on Agency,* §§210, 211.

This reasoning applies with more than ordinary force to the Sheriff, who is the appointee of the law and a *public agent,* and because he is not alone the agent of the defendant, but also of the plaintiff in execution. He is the plaintiff's agent to collect his money by the sale of the defendant's property. It is in many cases the interest of the plaintiff that the property shall sell for the highest price, as where the whole property of the defendant, at a fair price, is either barely enough or not enough ·to pay his judgment. · Any infidelity in the Sheriff in such cases, in not bringing the property fairly into market, is an injury to both plaintiff and defendant, and he violates his duty to both. The right to purchase is in contravention of the policy of the law. The State has a right to require skill, diligence and fidelity in her agents. The paramount good of the whole people requires that she should exact all these things. To secure them, it is wise to prohibit the Sheriff from buying. It is her duty so to regulate the execution of the laws, as to prevent injustice to the citizen, and to remove temptations from those who are chosen to execute them. The Sheriff *accepts* office—it is not forced upon him. He cannot, therefore, complain of the disabilities which are incident to it. All these considerations derive strength from the

Harrison and others *vs.* McHenry.        :

fact that, at Sheriff's sales, there are peculiar facilities for the officer to perpetrate frauds without detection. This facility to do wrong, and this difficulty of detection, give almost resistless force to the temptation. The disability of a selling agent of the Court, to purchase property which he is required to sell, was held by the *House of Lords,* in the case of the *York Buildings Co. vs. McKenrie,* which Judge *Kent* pronounces "one of the most interesting cases, on a mere technical rule of law, that is to be met with in the annals of our jurisprudence. 8 *Brow. P. Cas. by Tomlin's App.* It vindicates the doctrine we now hold, the more especially as the agent of the Court, appointed in that case to sell the property of an insolvent company for the benefit of creditors, occupied the position which the Sheriff occupies in this case. It is our judgment, therefore, that a purchase by a Sheriff is absolutely void, and yields to the title of another, acquired by a subsequent sale of the same property.* In *Barker vs. Marine Ins. Co.* Judge *Story,* in pronouncing upon the validity of a sale by the master of a ship, acting as agent for the owners, where he became the purchaser, says, "As to the first point, it appears to me that the sale wrought no change in the title of the property, whatsoever. *It was a merely inoperative Act, leaving the property exactly where it found it.* It is impossible that a person can be, at the same time, buyer and seller; and a person who acts as agent in selling, cannot, upon the known principles of law, become a purchaser at the sale." 2 *Mason's R.* 371. See, also, 1 *Murph.* 35. *C. & N.* 550. 5 *B. Munroe's R.* 337. 5 *Conn.* 475. 3 *Bibb,* 450. 1 *Bailey, S. C. R.* 467.

The Court below ruled in accordance with our opinions upon this point, but held that the Sheriff might act as agent of an absent person, and that a purchase made by him, as such agent, would be valid. To this latter opinion we dissent. If the policy of the law prohibits a Sheriff from buying on his own account, I do not see how it is competent for him to purchase as the agent of another. He can do nothing for himself or for another, which is incompatible with his duties as Sheriff. We have seen what

---

*See Act of General Assembly, 1850, (*Pam.* 369,) affirming this doctrine by legislative enactment.—[REP.]

they are.  His skill, diligence and fidelity belong to the de-
fendant in execution.  He may not be in this latter case sub-
ject to the same temptations to do wrong, that he is subject to
when he buys for himself.  This is true; but still the duty
which he assumes as agent for the buyer, is incompatible with
the duty which he·has assumed as agent for the seller.  If act-
ing under a general and unrestricted power to buy, at auction,
he must be understood as charged·with the duty of buying as
as low as possible, whilst, at the same time, it is his duty, as
agent of the seller, to make the property bring as much as possi-
ble.  Here is a direct antagonism of position and duty, and in-·
volves, almost necessarily, infidelity to one or the other of his
principals.  His first obligation is to the seller, and the law will
not permit him to place himself in a position which subjects him
to the chances of violating that obligation—its policy will not
allow it.  " If A (says Judge *Story*) should employ a broker to
sell goods for him at the highest price he could get, and his
judgment should be confided in, and B should, at the same time,
employ the same broker to purchase the like goods, at the low-
est price for which they could be obtained, it is plain, that if
this mutual agency were conceded, it might operate as a com-
plete surprise on the confidence of both parties, and would thus
be a fraud upon them.  Indeed, it would be utterly incompatible
with the duties of the broker to act for both under such circum-
stances, since, for all real purposes, he would be both buyer and
seller, and the law will not tolerate any man in becoming both
buyer and seller, where the interests of third persons are con-
cerned."  *Story on Agency*, 31, 32.  And again, he says, rea-
soning upon the inability of an agent to become a purchaser,
"For the like reason, an agent of the seller cannot become the
agent of the purchaser in the same transaction.  *Story on Agency*,
203.  See, also, *Paley on Agency, by Lloyd*, 33, *note* 3.  *Wright
vs. Dunnat*, 2 *Camp.* 203.  2 *Chitty's R.* 205.  These princi-
ples apply to Sheriffs, and the policy of the disability in their
case is very manifest.  The opinion of the presiding Judge was
a general one, that a Sheriff could, at his own sale, become the
agent of an absent purchaser.  It, therefore, asserted his pow-

VOL IX 22

er to act as a *discretionary* agent, to buy at his own sale.   From
the facts of the case, we conclude that the Court meant to go
that length; and it is that opinion that we reverse, whether the
Sheriff could not act as the agent of a purchaser, to make a
*definite* bid, or otherwise, where no discretionary powers are con-
ferred, are not questions made by this record.

[2.] The Court also instructed the Jury, that a person could
*assume* an agency, and if his acts are ratified, they will become
valid.   This is true of all who can, by law, become an agent.
It is generally true.   The Court, however, applied the rule to the
Sheriff in this case.   As to him it is not true.   He cannot become,
as I have attempted to show, an agent for a purchaser at his own
sale.   If he cannot act as agent by appointment, he cannot be
made an agent by ratification.   This requires no argument and
no illustration; and in this particular, we think the Court erred.

Since the sale which gave rise to this controversy, the Legis-
lature has passed an Act prohibiting a Sheriff from becoming a
purchaser at his own sale, making the sale void and subjecting
him to punishment if he violates the law.   This Act shows the
view of the General Assembly as to the policy of such purchases.

[3.] The presiding Judge decided, that a sale of property un-
der execution by a junior *fi. fa.* defeated the lien of an older
judgment upon the same property; which decision is also except-
ed to.   If this question were now made for the first time, in this
State, we should be compelled to hold differently, but inasmuch
as for many years the decisions of our Courts have been in ac-
cordance with the ruling of the Court below, we affirm the de-
cision.   By Statute in Georgia, judgments bind all the property
of the defendant from their date.   That judgment, which is prior
in time, is superior in lien.   This is true of all liens.   Liens can
only be defeated by express waiver, or by some act of the party
which amounts to a waiver.   " The principle (say the Supreme
Court of the United States, through Ch. J. *Marshall, in Rankin &
Schatrell vs. Scott,* 12 *Wheat.* 177) is believed to be universal,
that a prior lien gives a prior claim, which is entitled to prior
satisfaction, out of the subject which it binds, unless the lien be
intrinsically defective, or be displaced by some act of the party

holding it, which will postpone him in a Court of Law or Equity to a subsequent claimant.   The single circumstance of not proceeding upon it, until a subsequent lien has been obtained and carried into execution, has never been considered such an act." The lien of a judgment is statutory, and is as strong as the lien of a mortgage.   A junior mortgage, foreclosed, does not, by a sale of the mortgaged property, displace the lien of an older mortgage.   In that case, the property is sold subject to the senior lien, and the purchaser buys with that understanding.   The mortgage of older date is recorded, and that is notice to all the world.   Why should the rule be different in case of judgments? They are founded on proceedings of record—they are themselves recorded.   A consent to the sale by the older judgment creditor, would unquestionably defeat its lien.   So, also, if it comes in (as it may do) and receives the money raised by the sale, it could not afterwards sell the property.   6 *How. M. R.* 530.   *Ibid,* 543.   *Ibid,* 536.   *Ibid,* 554.   7 *Ibid,* 397.   2 *McLean,* 78. *Wright,* 47.   13 *Johns.* 462.   *Ibid,* 533.   12 *Wheat.* 177.

But this is not an open question here.   The decision of the Judge, in this case, has been the law of our Courts for years. Under that law, the title to a vast amount of property has passed.   The Legislature has acquiesced in it.   When a Statute has, by a long series of decisions, received a construction which the people have acted upon, and in which the Legislature has acquiesced, we do not feel at liberty, not feeling it to be an imperious obligation, to disturb that construction—more especially in cases where, as in this, serious injury would result to citizens who have rights originating under that construction.   We leave the error for the consideration of the Legislature.   We recollect no instance, in this State, in which the rule has been settled different from the decision in this case.   In the Eastern Circuit, which is the oldest in this State, upon the authority of Judge *Law,* the decisions have been to this effect.   *R. M. Charleton's R.* 327.

Let the judgment be reversed.