BRUNSWICK SAVINGS AND TRUST COMPANY *et al. v.*
NATIONAL BANK OF BRUNSWICK.

1. The sale of property under an execution issued upon the foreclosure of a
   mortgage thereon, will divest the lien of a judgment against the mort-
   gagor of older date than such mortgage, and will pass to the purchaser at
   such sale the title to the mortgaged property freed from the encumbrance
   of the lien imposed by the older judgment.
2. The fact that at the time the mortgage execution is proceeding to sell the
   mortgaged property, the execution issued upon such general judgment
   has been enjoined at the suit of the mortgagor, affords no reason for the
   grant of an injunction at the suit of the holder of such judgment lien
   against the plaintiff in the mortgage fi. fa., to restrain him from selling
   the mortgaged property under an execution based upon a judgment of
   foreclosure.

Submitted October 26; Reargued December 18, 1897.—Decided January 10, 1898.

Injunction.   Before Judge Sweat.   Glynn county.   July 28,
1897.

The National Bank of Brunswick brought its petition against
the Brunswick Savings & Trust Company, and Berrie, sheriff
of Glynn county, alleging: During the December term, 1894,
of the superior court, Jordan S. Thomas as receiver of the
First National Bank of Brunswick recovered a judgment against
Mrs. Burbage, of said county, for $10,500 principal, besides in-
terest and costs, upon which execution was duly issued and
docketed.   The judgment and execution were duly assigned to
the petitioner, which now holds the same for value, and is en-
titled to all the rights of the plaintiff in fi. fa.   After the exe-
cution had been issued and docketed according to law, Mrs.
Burbage mortgaged to the Brunswick Savings & Trust Com-
pany a specified land lot, to secure her promissory note for
$3,000 thereafter maturing.   Said mortgage was junior in dig-
nity to the lien held by petitioner.   The Brunswick Savings &
Trust Company, at the May term, 1896, of said court, pro-
ceeded to foreclose its mortgage against Mrs. Burbage, and dur-
ing the December term, 1896, judgment absolute was entered
in its favor against her for $3,000 principal, besides interest
and costs, and execution duly issued.   Petitioner caused the
execution against Mrs. Burbage to be levied on certain lots, in-
cluding the lot before specified as the property of the defendant,

and the property so levied upon was advertised for sale by Berrie, as sheriff, to be sold on the first Tuesday in April, 1897, to satisfy said execution; but upon a petition by Mrs. Burbage praying that the sale be enjoined, an order was granted by the superior court restraining petitioner from proceeding with the sale, and enjoining the sheriff from selling the property at the time and place advertised; and said restraining order is now of force, and said equitable cause of action now pending in said court. The Brunswick Savings & Trust Company is proceeding with its mortgage execution by levy on the property therein pointed out, and has advertised said land for sale on the first Tuesday in July, 1897. It is a matter of grave legal doubt as to how far such a sale, if had, would affect petitioner's rights as the holder of the judgment lien aforesaid and as to how far the purchaser at the sale would buy the property free from the lien of petitioner's judgment and execution, and as to whether by any form of notice a sale could be had subject to petitioner's said lien, and as to how petitioner's judgment, being enjoined, could, even if its lien attached to the proceeds of said sale in lieu of the property itself, assert said lien upon the proceeds of the sale, and as to whether, in the doubtful state of the law on this subject, such a sale under a junior mortgage execution could have the legal effect to convey the property to a purchaser free from petitioner's lien; in which event petitioner would be greatly injured and damaged, because the mortgaged lot is the most valuable of all the properties of said Mrs. Burbage, and all her remaining properties would not be sufficient to pay off and discharge the execution held by petitioner; and besides, in view of the legal doubt existing as to the effect of the sale under the circumstances hereinbefore recited, the property would bring far less than its fair market value. Mrs. Burbage is insolvent, and petitioner's only recourse against her by reason of its judgment lien is to subject said property levied upon, including said lot 209. Petitioner, waiving discovery, prayed for an injunction restraining the Brunswick Savings & Trust Company and Berrie, sheriff, from selling said land lot, and for general relief. The court granted the restraining order, and at the hearing defendants filed a demurrer upon the

grounds that the petition does not set forth any reason why the defendants should be enjoined from proceeding with the sale of the property; that there is no equity in the petition; and that the plaintiff has a complete remedy at law.   They moved that the petition be dismissed and the restraining order be vacated.   The court overruled the motion, and granted an injunction restraining the defendants, until the next term and until the further order of the court, from selling the property in question under the junior mortgage fi. fa.

*Atkinson & Dunwody*, for plaintiffs in error.
*Goodyear & Kay*, contra.

LEWIS, J.   1. In some of the States any senior liens are unaffected by a sale under a junior judgment, and remain enforceable as before.   In other States an execution sale transfers the title regardless of both junior and senior liens; their holders being relegated to proceedings for distribution of the proceeds in the sheriff's hands.   22 Am. & Eng. Enc. L. (1st ed.) 637–639.   Before this court was established, it had been the prevailing practice and the law of our courts for years, that the lien of a judgment no longer attaches to property after it is sold by the sheriff under a junior judgment, and that the remedy of the creditor is to claim the fund.   In the case of *Harrison* v. *McHenry*, 9 *Ga.* 164, the soundness of this doctrine was questioned.   In the opinion delivered in that case by Judge Nisbet, on page 171, he says: "But this is not an open question here.   The decision of the judge in this case has been the law of our courts for years.   Under that law the title to a vast amount of property has passed.   The legislature has acquiesced in it.   When a statute has by a long series of decisions received a construction which the people have acted upon, and in which the legislature has acquiesced, we do not feel at liberty, not feeling it to be an imperious obligation, to disturb that construction, more especially in cases where, as in this, serious injury would result to citizens who have rights originating under that construction.   We leave the error for the consideration of the legislature.   We recollect no instance in this State in which the rule has been settled different from the decision in this case."

We are inclined to the conviction that the rule above laid down is founded upon sound reason, and upon wise considerations of public policy. It certainly is to the interest of both the debtor and the creditor that when the debtor's property is exposed to sale for the purpose of satisfying his debts, it should be placed upon the market in such a way as to bring as much as possible. If the property should be exposed to an execution sale with the idea prevailing in the public mind that it might at any time again be seized under older judgments, this would necessarily have the effect of deterring bidders from incurring the risk of giving anything like the full value of the property. On the other hand, if it was understood that such sale divested all older judgment liens, and that the purchaser would not have to look after either the appropriation of the fund or the extinguishment of such liens, the title to the property thus acquired would be safer, and bidding would be freer and more liberal. Indeed this rule seems to be in accordance with the spirit of our law upon the subject of protecting innocent purchasers at judicial sales. Section 5449 of the Civil Code declares that the purchaser must look for himself as to the *title* and *soundness* of all property sold under judicial process. Section 5454 declares that the purchaser at judicial sales is not bound to look to the appropriation of the proceeds of the sale, nor to the returns made by the officer. The innocent purchaser is bound *only* to see that the officer has competent authority to sell, and that he is apparently proceeding to sell under prescribed forms. If such senior liens were unaffected by a sale under junior judgments, it would render more or less uncertain all title to property thus acquired, and would materially add to litigations touching the purchaser's title and the encumbrance on the land bought at sheriff's sales. It would also place it in the power of a judgment creditor to hold open his judgment and postpone junior judgment creditors indefinitely. But it is not necessary to inquire whether the doctrine laid down in this case is sound in reason. This court has uniformly held to the ruling in *Harrison* v. *McHenry* whenever the question has been made. See *Dowdell* v. *Neal*, 10 *Ga.* 148; *Tarver* v. *Ellison*, 57 *Ga.* 57. For over fifty years has the legislature

acquiesced in this construction of the law. Title to property has been acquired under it, and it would be difficult to imagine a case where the principle of stare decisis could be invoked with more force and reason than in this instance.

But it is urged by the counsel for the defendant in error, that the above rule is not applicable to a sale under a junior mortgage fi. fa. It is true that the lien of a mortgage arises by contract; but a lien thus acquired differs from the imposed lien arising upon the rendition of a general judgment only in that the former binds the particular property covered by the mortgage, while the latter binds all the property of the debtor. The *principle* involved is, that an execution sale divests the liens of all general judgments against the debtor. When the lien of a mortgage is sought to be enforced by a sale of the property under a foreclosure proceeding, such sale has the same effect, so far as the interest of the defendant in execution is concerned, as though it were brought about under a general judgment against him; and if in the latter case the effect of a sale under such a judgment, is to pass to the purchaser the title to the property sold, freed from the encumbrance of a senior general judgment, we know of no reason why a sale of the property covered by a mortgage under a mortgage execution should not have a like effect, and in both instances the holder of a senior judgment be remitted to claim the fund realized from such sale. Indeed all the reasons mentioned above why sales under judicial process should divest older liens from the property, and transfer them to the fund, apply with as much force to a mortgage execution as to any other sort of court process. It is true, if the mortgage remains unforeclosed, the sale under a junior judgment will not divest the lien of the mortgage without the consent of the mortgagor, the mortgagee, and the plaintiff in fi. fa. See Civil Code, § 2759. The reason for this is patent. In the first place, the mortgage creditor with an unforeclosed mortgage is not in a position to assert a claim to the fund. Generally, a creditor can not claim the proceeds of a sale, when he has not the power himself to enforce a sale. Again, the debtor has the right under the law to insist upon a foreclosure before his property can be seized to satisfy the mort-

gage, and has the privilege of redeeming the property at any time pending the proceedings to foreclose and to sell. Hence, the statute requires his consent, as well as the mortgagee's, before a sale can divest this special lien. But as to sales by mortgage execution under a judgment of foreclosure, the statute seems to place the mortgage-creditor upon the same footing with any general judgment creditor. Section 2741 of the Civil Code declares: "Property mortgaged may be sold under other process, subject to the lien of the mortgage. If the mortgage is foreclosed, the mortgagee may place his execution in the hands of the officer of the law making the sale, and cause the title unencumbered to be sold, and claim the proceeds according to the date of his lien." Section 2758 declares: "If other fi. fas. are levied on the mortgaged property, and the same is sold, the mortgage fi. fa. may nevertheless claim the proceeds of the sale, if its lien is superior."

If we are correct in the above conclusion, then it follows that there is no equity in the petition filed in the present case, in so far as it rested upon the allegation that the plaintiff was the holder of a senior general judgment, and that it was doubtful whether a sale under a mortgage foreclosure based upon a mortgage junior in point of dignity to the senior general execution would pass the title freed from the encumbrance of such senior execution. There was no reason why any person should have hesitated to bid upon the property offered for sale under the mortgage foreclosure, for such person would have been protected against the lien of the senior general judgment, and the holder of the latter would have been remitted to his right to claim the proceeds of the sale.

2. It is insisted, however, that inasmuch as the senior general execution had been enjoined upon the petition of the defendant in fi. fa., the execution based upon the mortgage foreclosure should likewise be enjoined until the rights of the general judgment creditor could be fully adjudicated. The record fails to disclose that the plaintiff in the mortgage execution had anything whatever to do with this injunction; and why it should deter him from proceeding to enforce his lien we are at a loss to determine. The fact that the injunction was operating

only against the general execution to prevent it from selling the property levied upon, did not prohibit the general execution from claiming the fund arising from the mortgage sale; and even if it had gone to that extent, it would have been the duty of the superior court judge rather to have modified the injunction previously granted against the general execution, than to have drawn into that litigation the mortgagee in the present case, who was in no way concerned in its result.

Upon the principles above announced, we conclude that the court erred in granting the injunction prayed for; and the judgment is accordingly

*Reversed.     All the Justices concurring.*