### In re WESTMORELAND.

(District Court, N. D. Georgia. February 28, 1925.)

No. 9781.

**1. Judgment ⊂⊃800(5)—Lien transferred from property sold at judicial sale to proceeds.**

Under the law of Georgia the lien of a general judgment is divested from all property sold at judicial sale, even under junior process, and is transferred to the fund raised.

**2. Bankruptcy ⊂⊃262(3)—Decree for alimony does not prevent sale in bankruptcy of husband's property on which it is a lien.**

A divorced wife, awarded permanent alimony payable in periodical installments, can-

not prevent the sale in bankruptcy of real estate of her husband on which her judgment is a lien, but the proceeds, to which the lien is transferred must be held subject to payment of installments of alimony as they become due, if not collectible from the husband.

**3. Bankruptcy ⊂⊃267—Costs and expenses of proceedings in which lien creditors have no interest are not chargeable against the property to diminish their security.**

Where property in which creditors have liens is sold by a trustee, the general costs and expenses of the bankruptcy cannot be taken from the fund realized until the liens are satisfied.

**4. Bankruptcy ⊂⊃267 — Accretions to fund pending litigation subject to liens thereon.**

Pending a successful contest for an interest in a fund in court by a junior lienholder, his lien attaches to accretions during the contest, and he is entitled to have them used to prevent diminution of his security by taxes and accruing interest in prior liens.

In Bankruptcy. In the matter of Willis F. Westmoreland, bankrupt. On application by trustee for instruction as to acceptance of bids for property. Instructions given.

Alston, Alston, Foster & Moise, of Atlanta, Ga., for Mrs. Westmoreland.

Walter S. Dillon, of Atlanta, Ga., for trustee.

Fuller & Bell and Kobak & Levy, all of Atlanta, Ga., for bankrupt.

SIBLEY, District Judge. This is the sequel to In re Westmoreland (D. C.) 298 F. 484, and Westmoreland v. Dodd (C. C. A.) 2 F.(2d) 212. By those decisions it is settled that the court may sell and administer the property in dispute, and that the alimony decree of Mrs. Westmoreland has the lien of a general judgment, not only for arrears of alimony, but for the enforcement of all future installments that may accrue and remain unpaid. No new facts are developed. The question recurring for decision is whether, under the bids reported by the trustee, he shall sell the property free of all liens for $35,000, or subject to all liens for $200, or shall abandon the property as burdensome. Abandonment need not be considered, because at least $200 can be realized by sale to Mrs. Westmoreland on her bid, subject to all liens.

[1] Can more be realized for the general estate by selling for $35,000, free of all liens, and providing for them from the proceeds? Mrs. Westmoreland's refusal to consent to a sale except to herself, or to agree on the present value of her lien against the proper-

ty, does not prevent this sale. She has not a contract lien against the property, nor a special lien charged on it by the alimony decree, but has, as was heretofore held, only a general judgment lien arising by operation of law. Such a lien, under Georgia law, is divested from all property sold at judicial sale, even under junior process, and is transferred to the fund raised. Brunswick Savings & Trust Co. v. National Bank of Brunswick, 102 Ga. 776, 29 S. E. 688. The consent of the holder of the older judgment is not requisite, nor need he even have other notice than that given by the advertisement of the sale. Much more may a court of equity, on full notice and after hearing, sell the property free from such a judgment lien, and transfer it to the proceeds.

[2] The language in the opinion of the Circuit Court of Appeals about the consent of Mrs. Westmoreland refers rather to a settlement of the amount to be paid her as the value of her lien than to the sale itself. She has no right under her judgment lien to have any particular investment to stand until she is satisfied. Her right is only to receive $200 per month so long as the essential conditions of life and nonmarriage continue, and to sell from time to time enough of this property to pay it. When by any form of judicial sale her lien arising by law to enforce this right is transferred to a money fund, the right remains to have, if necessary, $200 paid from the fund until her alimony terminates or the fund is exhausted. She cannot be settled with at once without her consent, because no court can estimate the present value of a right conditioned as hers is. Dunbar v. Dunbar, 190 U. S. 340, 23 S. Ct. 757, 47 L. Ed. 1084. But by holding the fund to meet her demands as they arise no right of hers is invaded. Her rights are secured.

The direct advantage in such a course to the general estate is problematical. The surplus fund above the prior mortgages would amount to less than $8,000, and would be exhausted in three or four years, with nothing to indicate or establish likelihood of either the death or remarriage of Mrs. Westmoreland within that time. But indirectly an advantage may be derived to the general estate in this way: Dr. Westmoreland is in life and a skillful physician and surgeon. His obligation to pay this alimony is not in any way impaired by his bankruptcy. Wetmore v. Markoe, 196 U. S. 68, 25 S. Ct. 172, 49 L. Ed. 390, 2 Ann. Cas. 265. The lien upon this property is only a security for its payment. The title to the property, on adjudication, has passed into this trustee, subject to Mrs. Westmoreland's lien. The proceeds of sale would stand in the same case. Should Mrs. Westmoreland obtain payment out of this security, instead of directly from Dr. Westmoreland, the present owners of the property could contend for its exoneration by Dr. Westmoreland to the extent that it was used to pay his obligations arising subsequently to the bankruptcy. Such a contention would be plausible, and, together with the chance of saving some of the fund by the death or remarriage of Mrs. Westmoreland before it is exhausted, is worth more than $200. The preference of the trustee to take the course offering these chances will be authorized by the court.

[3] Applications are also made for the allowance of commissions and attorney's fees from the proceeds of this sale, and from the accumulated rents from this property pending litigation. There is no other estate for their payment. All the lienors, including Mrs. Westmoreland, have been brought into court against their will by the trustee, and no one of them has sought any enforcement of their liens or other relief. Mrs. Westmoreland's present motion that her bid be accepted is made in her right as bidder, and not as lienor. She has won her case touching her lien. The corpus of the fund cannot be abated by the general costs of administration until these liens are all satisfied. In re Hansen & Birch (D. C.) 292 F. 898.

[4] The rents stand on a different footing, but the result is the same. While a general judgment has in law no lien on money, when a fund is raised in court and such a lien is contesting for the fund, it attaches to accretions pending the contest. It would be inequitable to litigate over this property, and by delay increase the amount of liens superior to that of Mrs. Westmoreland by accrued interest and taxes, and not make the loss good from the rents or other increment arising from the fund. Repairs and such expenses as were for the preservation of the fund, or would have been necessarily incurred by Mrs. Westmoreland in otherwise securing payment, are, of course, allowable out of it. In re Hansen & Birch, supra.

The trustee may make up an account of such items, and the parties will be specially heard as to their correctness. General expenses of bankruptcy and litigation must await further developments.