### GUGEL et al. v. NEW ORLEANS NAT. BANK.*

(Circuit Court of Appeals, Fifth Circuit. February 22, 1917.)

No. 2906.

1. CONSTITUTIONAL LAW ⬦48—CONSTRUCTION 'OF STATUTES.

Where a statute is susceptible of two constructions, one of which works out more reasonable results and in no way infringes the Constitution, that construction will be adopted.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Statutes, Cent. Dig. § 56.]

2. BANKRUPTCY ⬦368—FEES OF OFFICERS—CONSTRUCTION.

Bankr. Act July 1, 1898, c. 541, 30 Stat. 544, as amended by Act June 25, 1910, c. 412, 36 Stat. 838, provides that the trustee shall receive commissions on all moneys disbursed or turned over to any person including lienholders. The amendment added the provisions as to lienholders. Section 67d (Comp. St. 1913, § 9651) declares that liens given or accepted in good faith, and not in contemplation of or in fraud of the act, or for a present consideration shall not be affected by the act. Held that, on sale of personal and real property on which there were liens and mortgages greater in amount than the sum received from the sale in bankruptcy proceedings free from liens, the trustee is not entitled to the commissions provided for, despite the amendment, its language merely relating to the basis of computation of the commissions, and having no reference to the source from which payment is to be made; but where there is a real or apparent equity in incumbered property of a bankrupt estate, and reasonable grounds for administering it in bankruptcy, the lienholder should be charged with the reasonable costs of such proceedings in the bankruptcy court as are appropriate to foreclosing the lien and selling the incumbered property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571.]

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied April 12, 1917.

**3. BANKRUPTCY ☞258—SALE OF PROPERTY—PROCEEDINGS—LIENS.**

Where a lienholder accepted service of a petition, filed in the bankruptcy proceeding of the owner, to sell the property free from liens, such acceptance amounts to a consent to that mode of disposition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 358, 359, 362.]

**4. BANKRUPTCY ☞223, 482(1)—FEES—RIGHT TO.**

Where a trustee in bankruptcy is not entitled to statutory commissions for general administration of the estate out of the proceeds of the sale of mortgaged property, which amount to less than the liens, the referee is entitled to no commissions, and the trustee cannot take credit for counsel fees for services unconnected with the sale of the property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–897.]

**5. BANKRUPTCY ☞323—PROVABLE CLAIMS—MORTGAGES—ATTORNEYS' FEES— LEGAL PROCEEDINGS.**

Where a mortgage note provided for a 10 per cent. attorney's fee in case it should become necessary to institute legal proceedings for the collection of the note or any part thereof, the mortgagee was not entitled to such fee, though placing the note in attorney's hands, where on bankruptcy of the mortgagor the property was with consent of the lienholders sold free from liens by the bankruptcy court, for no legal proceedings for foreclosure were instituted.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 503, 505, 513.]

Petition to Superintend and Revise from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

In the matter of the bankruptcy of Hector Francis Crosier. On opposition of the New Orleans National Bank, the claims of Andrew G. Gugel, trustee in bankruptcy, and others, for commissions and attorney's fees were denied, and the trustee and others petition to superintend and revise. Petition denied.

The mortgage note referred to provided that:

"In case it shall become necessary to institute legal proceedings for the recovery of the amount of said note, or any part thereof, the purchaser binds and obligates itself to pay the fees of the attorney at law who may be employed for that purpose, which fees are hereby fixed at 10 per cent. of the amount which may be due."

Edwin T. Merrick, Ralph J. Schwarz, John Dymond, Jr., and A. Giffen Levy, all of New Orleans, La., for petitioners.

Gustave Lemle and W. Catesby Jones, both of New Orleans, La., for respondent.

Before WALKER, Circuit Judge, and GRUBB, District Judge.

GRUBB, District Judge. This is a petition to superintend and revise an order of the District Court for the Eastern District of Louisiana, the effect of which was to disallow the referee and trustee commissions and the attorney for the trustee a fee out of the proceeds of the sale of personal and real property, on which there were liens and mortgages greater in amount than the amount realized from the sale of the property. The District Judge allowed to the trustee the amount it would have been required to expend to foreclose the liens in the state court, but disallowed commissions based on the gen-

eral administration of the estate by the referee and trustee and the general attorney's fee for counsel for the trustee. The District Court also declined to recognize the claimed right of the holder of the first mortgage to an attorney's fee, out of the proceeds of the sale, of 10 per cent., as provided for in the mortgage note. These are the two questions presented for review.

[1, 2] The contention of the trustee is that, whatever may have been the law before the amendment of June 25, 1910, to the Bankruptcy Act, as to the right of the trustee to commissions and attorney's fees to be paid out of the funds realized from the sale of the mortgaged property, though the funds were insufficient to satisfy the mortgage liens on it, the matter is set at rest by that amendment, which provides that trustees shall receive commissions on all moneys disbursed or turned over to any person, including lienholders. If the reference in the added words is to the *source* of payment, the language is undoubtedly broad enough to include payment at the expense of the lienholder. However, there seem to be two possible constructions that may be given the language—one, that it relates to the basis of computation of the commission, and has no reference to the source from which payment is to be made; and the other, that it has reference to the source of payment as well. There is nothing in the language of the amendment that would force the latter construction. It is necessary, therefore, to look beyond the language to the purpose to be subserved and the results that follow from the respective constructions, in order to reach a conclusion.

The purpose of Congress was evidently to increase the compensation of the trustee, but not necessarily at the expense of lienholders and with the effect of displacing their liens. Section 67d forbids such a construction. The purpose to increase is worked out by enlarging the basis of computation, so as to include amounts paid or turned over to lienholders, upon which, before the amendment, commissions were not, in many districts, computed, even where the payments of commissions, when so computed, were to be made out of the fund going to unsecured creditors. There was, therefore, a field of operation for the amendment without attributing to it the effect to displace liens and mortgages. To give it this broader construction would have the effect of imposing on the lienholder the burden of the expense of the general administration of the bankrupt estate, in which he has no interest and from which he derives no benefit. We cannot think that Congress intended any such inequitable result. Imposing upon the lienholder the burden of the cost of the general administration of an insolvent estate, when he has ample security for his debt, is a denial of an adequate remedy for the collection of the debt secured by the lien. Certainly a construction involving such a result would not be adopted by the court, unless the language of the amendment forced it.

The language of the amendment being susceptible of the two constructions, we do not hesitate to attribute to it that which works out the more reasonable results, viz. that it was intended to furnish an enlarged basis for the computation of the trustee's commissions, but was not intended to affect the source of payment, so as to displace

liens in violation of the provisions of section 67d, as amended and re-enacted in 1910. The case of In re Breakwater Co. (D. C.) 220 Fed. 226, is not in conflict with our conclusion. In that case there was a fund going to unsecured creditors, out of which the commissions based on the amount disbursed to lienholders were to be paid. The objection to the allowance of the commissions did not come from a lienholder, but from an unsecured creditor of the bankrupt.

It does not follow that the trustee is never entitled to compensation, where he sells mortgaged property, and where the property sells for no more than enough to pay the liens on it. If there is a real or apparent equity in the property for the estate, and so reasonable grounds for administering it in bankruptcy, the lienholder should be charged with the reasonable costs of such proceedings in the bankruptcy court as are appropriate to foreclosing the lien and selling the incumbered property, but not with the commissions and expenses of the officers of the bankruptcy court incurred in the general administration of the estate in bankruptcy, from which the lienholders receive no benefit. This was the holding of the Court of Appeals for the Ninth Circuit in the case of In re Williams' Estate, 156 Fed. 934, 84 C. C. A. 434, and we think it is the rule that should prevail under the amendment of June 25, 1910, as well as under the original act of 1898. In that case the court said (156 Fed. 939, 84 C. C. A. 439):

"By coming into the bankruptcy court, therefore, the holder of a valid lien upon the estate of a bankrupt comes into an appropriate place and into a court amply able to enforce and protect his rights. By doing so the lienholder waives none of his rights. The enforcement of his lien in another court would entail upon the proceeds of the property upon which the lien exists the payment of the appropriate court costs; and so, in the enforcement of such lien in a court of bankruptcy, the proceeds of the property of the bankrupt upon which such lien exists is properly chargeable with the costs of such court appropriate to such enforcement, but with no other or further costs. They are not chargeable with the general costs of the administration of the bankrupt's estate, such as the services of a receiver in carrying on the business of the bankrupt, the expenses and losses of such business, the fees of the attorney for such receiver, the general fees of the trustee or those of his attorney. If so, the valid lien upon the estate of the bankrupt, which the bankruptcy act expressly declares shall be unaffected by any of its provisions, might very readily be destroyed, as it would unquestionably be, should such costs equal or exceed the proceeds in cases like the present where the aggregate amount of the valid liens exceeds the proceeds of the entire estate of the bankrupt."

[3, 4] In this case there was an apparent equity in the incumbered property to the bankrupt estate, and the District Court properly allowed the trustee the reasonable cost of selling the incumbered property, measuring it by the usual cost in the state court of foreclosing the liens. The lienholder consented that the property be sold on such terms, when it accepted the service of the petition to sell free from liens. If the trustee is not entitled to his statutory commissions for general administration of the estate out of the proceeds of the sale of the mortgaged property, a fortiori the referee is not. Nor is the trustee entitled to take credit for counsel fees for services unconnected with the sale of the property.

[5] As to the right of the first mortgagee to be allowed an attorney's fee of 10 per cent., as provided in his mortgage note, it is sufficient to say that in our opinion the occasion which called that provision into effect had not arisen under the facts in this case when the petition in bankruptcy was filed, since there were no legal proceedings instituted on the note or mortgage before the petition in bankruptcy was filed or thereafter. The sale free from liens in the bankruptcy court was not the equivalent, in this respect, of a foreclosure by the mortgagee of the mortgage lien. Merely placing the note in an attorney's hands did not fix the liability, which, as we construed the terms of the note, depended upon the rendition of legal services. The case of In re Roche, 101 Fed. 956, 42 C. C. A. 115, decided by this court, supports our conclusion.

The petition to superintend and revise is denied.

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes