## In re HANSEN & BIRCH.

(District Court, N. D. Georgia. October 17, 1923.)

No. 8695.

1. **Bankruptcy ⬤⇒474—Lienor, proceeded against in invitum, charged with no costs beyond benefits.**

Where the lienor does not seek the aid of the bankrupt court, but is proceeded against in invitum, he is, aside from the cost of preserving the property, chargeable with no costs of administration beyond the benefit to him measured by the necessary cost of foreclosure.

2. **Bankruptcy ⬤⇒476—Successful lien claimant held liable for expenses of administering bankrupt's estate only to extent necessary to protect his property.**

Where a bankruptcy trustee unsuccessfully contested a seller's lien to a soda fount in bankrupt's store, the successful lien claimant was liable only for half of the receiver's bond and commission, and rent of the store and insurance until the trustee took charge and the stock was sold, and thereafter he was liable only for a reasonable storage charge, and he was not liable for any part of the trustee's attorney's fees.

In Bankruptcy. In the matter of Hansen & Birch, bankrupts. Petition by the Liquid Carbonic Company to review an order of the referee. Order modified and affirmed.

Westmoreland & Smith, of Atlanta, Ga., for lienor.

McCallum & Sims and Savage & Crawford, all of Atlanta, Ga., for trustee.

SIBLEY, District Judge. Liquid Carbonic Company sold Hansen & Birch a soda fount for $2,360, a small amount only being paid, and title retained, but somewhat irregularly. December 22, 1922, a petition in bankruptcy was filed against Hansen & Birch and a receiver appointed. A trustee in bankruptcy was appointed January 19, 1923, and the stock of drugs sold to a mortgagee thereof on January 20th. On January 31st, the trustee sought leave to sell the soda fount free of liens, contending that the lien claimed by Liquid Carbonic Company was invalid. The lienor opposed the sale, asserting its retention of title to be valid, and the property worth less than the amount of the debt against it. Litigation followed, resulting in a sale for $700 in June, 1923, and in the upholding of the lien. Meanwhile the soda fount had been kept in the bankrupt's rented store, it being a fixture expensive to move and subject to injury, and rent amounting to $400 has accrued besides commissions and other expenses of bankruptcy, the whole expense of administration appearing to be $625, and the assets other than the fund in dispute being only $225. The referee prorated the expenses of rent, insurance, advertising, inventory, and appraisement between the general fund of $225 and this special fund of $700 in dispute, assessing $310 against the latter, and assessed against it also commissions to the receiver, referee, and trustee, and one-half of the fee allowed the trustee's attorney, all amounting to $90 more. These assessments are under review at the instance of Liquid Carbonic Company as being unauthorized and excessive.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] A bankruptcy proceeding is for the administration and not the dissipation of the estate. It is undertaken primarily for the benefit of general creditors and they in general control it. The trustee is chosen by them and is their representative, and litigation prosecuted by him is in their behalf. It was intended that the creditors, as business men, should see to there being a businesslike administration. They generally turn the matter over; however, to lawyers and the court, with frequently bad results, for often neither lawyers nor courts are economists. The bad judgment of the trustee in litigation or otherwise, which results in excessive expense, must be visited upon the general creditors or the fund belonging to them, unless so reprehensible as to fall upon the trustee himself and his legal adviser as resulting from a breach of their duty. The expenses cannot generally be justly put, in whole or in part, upon a successful opponent. The exception is the equitable one only that, where the contention is over property in the control of the court, such expense as was necessary for its preservation, or resulted in benefit to the successful litigant, may be charged against it and him. But the charge so made is to be measured, not by the outlay, if that be unreasonable, but by the necessity and the benefit involved. It may, in this case, have been reasonable and necessary to store the stock and soda fountain in the rented store until the trustee took charge and until the stock was sold, but the retention of the store for months afterward cannot well be justified. So the reduction of the property to cash and the foreclosure of the lien resulted in a benefit to the lienor, but only to the extent that it saved him the expense necessarily incident to a foreclosure in this or another court. Where, as here, the lienor does not seek the aid of the bankrupt court, but is proceeded against in invitum, he is, aside from the cost of preserving the property, just dealt with, chargeable with no costs of administration beyond the benefit to him measured by this necessary cost of foreclosure. Gugel v. New Orleans Nat. Bank, 239 Fed. 676, 152 C. C. A. 510.

[2] No doubt can be had of the jurisdiction of the bankruptcy court to administer property found in the possession of the bankrupt, and to adjudicate claims to and liens upon it as a part of the bankruptcy proceeding. Collier on Bankruptcy (12th Ed.) p. 541. But the exercise of this jurisdiction in an adjudication touching a lien must always be sought by some litigant, who assumes responsibility for the consequences. Here it was the trustee, who, instead of relinquishing the property to lienor as burdensome to the estate, decided to contest the lien. Though this decision was doubtless made in good faith and upon a reasonable hope of success, it proved wrong. He and those he represents, and not the successful adversary, must bear the cost of the error. During the time the soda fount and stock were both in the store, one month, the rent and insurance should be divided between them equally, because each of them needed the outlay. The receiver's bond and commission should likewise be equally divided, for the same reason, though there would seem to be less necessity for a receiver to care for the soda fount than for the stock. No justification for requiring this lienor to pay one-half of his opponent's lawyer's fee can exist. Presumably the litigation would have lasted as long in another court as in

this, and a reasonable storage fee for this period may be charged against the property, though possibly in a court of law this would have been a part of the costs chargeable against the losing party. It will be fixed here at $100, including insurance premium, and costs, commissions, and advertising incident to foreclosure and sale are estimated at $60. The expense of the receiver's rent, commissions, and bond, after division by two, is fixed at $63, making a total of $223, which I think to be a reasonable assessment against this lienor's fund. This amount may be deducted from it and added to the general fund in the trustee's hands, for distribution by him to such claims as may exist against it and under the principles laid down in the Case of Gugel, supra.