**DIVERSIFIED MORTGAGE INVESTORS and Nine Corporation, Plaintiffs,**

v.

**Erwin A. LaROSE, Siegen Development, Incorporated, Diversified Mortgage Investors, Ex Officio Tax Collector For the Parish of East Baton Rouge, Frank W. Campbell, Dalton L. LaBorde, Bank of Commerce and Trust Company of St. Francisville, Louisiana, Keller Building Products of Baton Rouge, Inc., Boston Safe Deposit and Trust Company, United States of America, Collector of Revenue, State of Louisiana, William H. Wright, III, Reverend Vincent I. Klein-Peter and Breazeale, Sachse & Wilson, Defendants.**

**Bankruptcy No. 75-258.**

United States Bankruptcy Court, M. D. Louisiana.

Dec. 3, 1980.

Walter B. Stuart, IV, New Orleans, La., for said Diversified Mortg. Investors and said Nine Corp.

Erwin A. LaRose, Baton Rouge, La., the trustee herein, in support of said complaint.

Michael J. Uter, Baton Rouge, La., and John T. Bennett, Marksville, La., for Frank W. Campbell.

### REASONS FOR JUDGMENT

HARVEY H. POSNER, Bankruptcy Judge.

Diversified Mortgage Investors (DMI)–a mortgage creditor of the debtor/bankrupt–and DMI's wholly owned subsidiary, Nine Corporation, in seeking to acquire title to the mortgaged property, jointly filed a Complaint to Sell (certain immovable property) Subject to Certain Mortgages and Free and Clear of All Junior Mortgages, Liens and Privileges.

Inter alia, the complaint alleges that Frank W. Campbell, who was made a defendant, purports to be the holder of a promissory note the payment of which is secured by a mortgage on a portion of the property; that, although all payments due under said note and said mortgage have been made by DMI, defendant Campbell claims that he is entitled to an award of attorney's fees; that such claim is without foundation; that, therefore, the note and mortgage held by Campbell "should be declared null and void or returned to Diversified Mortgage Investors as legal subrogee of the note and mortgage"; and that the property should be sold (to Nine Corporation) free of "the mortgage and all claims of Frank W. Campbell against the property, or any portion of it."

It was on June 2, 1975, that Siegen Development, Inc. (Siegen), filed a petition seeking relief under Chapter XI of the Bankruptcy Act; and it was on February 17, 1976, that an order was entered directing that the case continue as a bankruptcy case.

On January 31, 1973, Campbell sold to Siegen Development, Inc., 113.61 acres of land for the sum of $704,382.00, of which amount the purchaser paid in cash the sum of $211,314.60, and for the balance of the purchase price, that is, the sum of $493,-067.40, the purchaser executed and delivered to the vendor, Campbell, its promissory note for said sum ($493,067.40), due and payable in four annual installments of $123,266.85 each, the first such installment being due and payable on January 31, 1974, and one such installment being due and payable on (but not before) the 31st day of January of each succeeding year thereafter (that is, 1975, 1976 and 1977) until all would have been paid, together with interest on the unpaid balance of principal at the rate of 6% per annum on each installment as it matured and annually on all unpaid installments–the payment of which note was secured by a vendor's privilege and special mortgage upon the property so conveyed.

Said note also evidences a promise that "... in the event that this note, or any installment thereof, or the interest thereon, is not paid when due and according to its tenor, and *is placed in the hands of an attorney at law for collection*, or is sued on," the maker would pay "twenty–five percent (25%) additional on the amount of both principal and interest as attorney's fees." (Emphasis added.)

The next paragraph of the note stipulates: "In the event that any installment of this note, or any interest thereon, is not paid promptly when due, this note and each and every installment thereof shall, ipso facto, and without any demand or putting in default, become immediately due and exigible."

Contemporaneously with the passage of the aforesaid act of Sale with Mortgage, Siegen granted to DMI a special mortgage for the sum of $3,300,000.00 upon certain property, including the 113.61 acres which Siegen acquired from Campbell as aforesaid. (Such a security instrument as that granted by Siegen to DMI is sometimes called a "wraparound" mortgage.)

The act of Sale with Mortgage whereby Campbell conveyed the 113.61 acres to Siegen contains the following provisions which are pertinent here:

"If BUYER shall become insolvent, or apply to a bankruptcy court to be adjudged a voluntary bankrupt, or proceedings be instituted to have BUYER adjudged an involuntary bankrupt, or proceedings be taken against BUYER looking to the appointment of a receiver or syndic, or any proceedings be instituted for the seizure or sale of the property herein mortgaged by judicial process, or in case BUYER should fail to pay the note, or any sum secured by this mortgage, or any part thereof, or the interest thereon, or said taxes, promptly when due, or to effect and keep in force insurance, or to transfer and deliver the policies, as herein provided, then, and in any of said events, all the indebtedness shall ipso facto, and without any demand or putting in default, become immediately due and exigible, and BUYER hereby waives right of hearing in Court in such event."

.  .  .  .  .

"Vendor (Campbell) and mortgagor (Siegen) herein agree that in the event of default in the note and/or the mortgage herein executed and identified with this mortgage, that it (sic) will give written notice of default to Diversified Mortgage Investors at its address at 100 Federal Street, Boston, Massachusetts, 02110, at least 30 days before the incurring of any penalties whatsoever, and during which period Diversified Mortgage Investors shall have the opportunity in which to cure any default insofar as the indebtedness is concerned as herein represented by the note executed by mortgagor, Siegen Development, Inc. In the event Diversified Mortgage Investors should correct the default within the said 30–day period, no penalty, as provided herein or in the note, shall be applicable."

On June 12, 1975–that is, ten days subsequent to Siegen's having initiated its proceeding for an arrangement–Campbell, through its attorneys, sent DMI a written notice which reads in pertinent part as follows:

"Because of Siegen Development, Inc.'s judicial admission of insolvency, as per 'In Proceedings For An arrangement, Number 75,258, United States District Court, Middle District of Louisiana,' Frank W. Campbell, holder of the promissory mortgage note described in the above referred to sale with mortgage hereby places the said Siegen Development, Inc., in default. In accordance with the terms of the above sale with mortgage, notice of such default is hereby given to Diversified Mortgage Investors, and in the event Diversified Mortgage Investors does not correct this default within the thirty (30) day period provided in the said sale with mortgage, all penalties and other provisions contained in said mortgage shall be sought and/or enforced, at his option, by the said Frank W. Campbell."

(Although a receiver had been appointed by the Court on June 3, 1975, there is no indication that any such notice was also sent to the receiver, Erwin A. LaRose, or to the debtor/mortgagor, Siegen, who was Campbell's *real* debtor.)

At that time (June 1975), both the 1974 and 1975 annual installments of the note had been paid (see Campbell Exhibit No. 4) and the unpaid principal balance of the note

stood at $246,533.70, which, in the ordinary course of events, was to mature in two equal annual installments of $123,266.85 each on (but not before) January 31, 1976, and January 31, 1977, respectively.

Following an exchange of letters between DMI's attorneys and Campbell's attorneys, DMI tendered to Campbell on March 22, 1976, a certified check in the amount of $138,058.87 in payment of the principal and the interest which had become due on January 31, 1976. This check was accepted and negotiated by Campbell.

On or before February 4, 1977, DMI offered to pay Campbell the last installment of the note (which installment had become due on January 31, 1977). In response, Campbell's attorneys notified DMI's attorneys that Campbell would not accept such payment and would not surrender the note unless an agreement could be reached for the payment of "a reasonable amount of attorney's fees." (The letter stated that Campbell had already paid fees in the amount of $6000 to his attorneys.)

■ The question before the Court is whether a provision for attorney's fees in a real estate mortgage can be enforced in a bankruptcy proceeding–which superseded an aborted arrangement proceeding under Chapter XI of the Bankruptcy Act–when the creditor had not fulfilled the stipulated preconditions to mortgage security for such fees until *after* the arrangement/bankruptcy proceedings had been instituted. It is our opinion that this question must be answered in the negative.

■ Although, under the provisions of the mortgage which Siegen had granted to Campbell, the unpaid balance of Siegen's indebtedness may have "ipso facto, and without any demand or putting in default, become immediately due and exigible" upon Siegen's filing its petition for. an arrangement, the operation of this provision did not *per se* have the effect of creating a liability for any attorney's fee, since the payment of

such fee was dependent upon the note's having been "placed in the hands of an attorney at law for collection" or its having been "sued on." See *Matter of Hagin*, 21 F.2d 434 (E.D.La.1927), aff'd *sub nom. Phoenix Bldg. and Homestead Ass'n v. E. A. Carrere's Sons*, 33 F.2d 563 (5th Cir. 1929), cert. den. 281 U.S. 726, 50 S.Ct. 240, 74 L.Ed. 1143.[1] See also *Gugel et al. v. New Orleans National Bank*, 239 F. 676 (5th Cir. 1917); *In re Roche*, 101 F. 956 (5th Cir. 1900); *Lerner Stores Corporation v. Electric Maid Bake Shops et al.*, 24 F.2d 780 (5th Cir. 1928); *L. Maxey, Inc. v. Walker*, 119 F.2d 535 (5th Cir. 1941); *In re Schindler*, 223 F.Supp. 512 (E.D.Mo.1963); and *In re Ebert*, 140 F.Supp. 597 (D.Del.1956).

We believe that the reasoning which the trial court (the Eastern District of Louisiana) enunciated in the *Hagin* case is particularly relevant here, and we quote as follows therefrom (21 F.2d at 438–439):

> "The mortgage creditor has a right to rely on his security and disregard the bankruptcy proceeding. He may abandon it and prove the whole debt as unsecured or he may be admitted only as a creditor for the balance remaining after the deduction of the value of the security. In the two last cases, of course, he must make proof of debt, but there is nothing in the law to compel him into the proceeding. Black on Bankruptcy (1st Ed.) § 566, p. 1196.
>
> "*The presumption is therefore that legal service on the mortgagee's behalf by an attorney at law is not necessary therein.*
>
> "It is the duty of the referee and the trustee and the creditors in meeting to determine whether the mortgaged or otherwise incumbered property of the bankrupt is of sufficient value to satisfy the known, valid, secured claims, and provide a surplus or equity in which they may share, or whether it is without value to the estate for the benefit of the general creditors, and is therefore an onerous or burdensome asset. (Citing cases)

---

**1.** In the *Hagin* case, the maturity of the debt was accelerated by bankruptcy, but the payment of an attorney's fee was dependent upon the necessity for the institution of suit. In that situation, the court said that "... the necessity for suit" did not arise, "because the bankruptcy court took possession of the property."

"In the first case, the trustee should proceed to liquidation by sale of the property. In the second, the referee should not permit the trustee to do so, but should order him to release and surrender possession and control, thus enabling the mortgage creditor to foreclose or otherwise proceed legally in the proper court. Where the property is retained for administration for the benefit of the general creditors, the act makes all commissions payable out of the general estate. (Citing cases) It is a rule in this district that, since a mortgage can only be enforced in Louisiana by judicial proceedings, if the trustee is authorized by the creditors, or by error of judgment as to value, or by the acquiescence or consent of the mortgagee, the incumbered property is sold free of liens and incumbrances for less than the mortgage debt, the mortgagee is bound to contribute to the general fund an amount sufficient to approximate what such proceedings might cost in the state courts, but these are distinguished from the costs of administration of the general estate. (Citing cases)

"*Since the trustee administers for the benefit of secured as well as unsecured creditors, there is no necessity for the employment of an attorney by either class of creditors under the statute, except if and when the validity of a particular claim is attacked, or its rank disputed, in which case the particular creditor elects to employ an attorney and pay for his services in the usual course.*" (Emphasis added.)

**2.** The Chapter XI Rules took effect on July 1, 1974.

**3.** The Bankruptcy Rules took effect on October 1, 1973.

**4.** This rule precludes a mortgage creditor from filing suit to reduce his note to judgment with a view toward then executing on such judgment, in lieu of mortgage foreclosure.

**5.** See n.3, supra.

**6.** The term "lien" is used in Rule 11–44 and Rule 601 to indicate/include "a consensual se-

■ An arrangement under Chapter XI may not alter the rights of *secured* creditors; it can modify the rights of *unsecured* creditors only. § 356 of the Bankruptcy Act. However, Rule 11–44 of the Rules of Bankruptcy Procedure [2] provides that the filing of a petition for an arrangement under Chapter XI of the Bankruptcy Act "... shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of *any act* or the commencement or continuation of any court proceeding to enforce any lien against his property ..." (Emphasis added.)

■ The stay provided by Rule 11–44 continues generally during the pendency of a Chapter XI case unless the case is converted to bankruptcy, in which event the stay provisions of Bankruptcy Rules 401 and 601 become applicable. See Advisory Committee's Notes to Rules 11–44 and 601.

Rule 401 of the Rules of Bankruptcy Procedure [3] provides that the filing of a bankruptcy petition "... shall operate as a stay of the commencement or continuation of any action against the bankrupt, or the enforcement of any judgment against him, if the action or judgment is founded on an unsecured provable debt other than one not dischargeable under clause (1), (5), (6), or (7) of § 17 of the Act." [4]

Rule 601 of the Rules of Bankruptcy Procedure [5] provides that the filing of a bankruptcy petition "... shall operate as a stay of *any act* or the commencement or continuation of any court proceeding to enforce (1) a lien [6] against property in the custody of bankruptcy court,[7] or (2) a lien against

curity interest in personal or real property, a lien obtained by judicial proceedings, a statutory lien, or any other variety of charge against property securing an obligation." Advisory Committee's Notes to Rules 11–44 and 601.

**7.** "Property is in the custody of the bankruptcy court if it is in the actual or constructive possession of the bankrupt at the date of bankruptcy. See *Ex parte Baldwin*, 291 U.S. 610, 615, 54 S.Ct. 551, 553, 78 L.Ed. 1020 (1934); *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 12, 44 S.Ct. 232, 234, 68 L.Ed. 533 (1924); *Lazarus, Michel & Lazarus v. Prentice*, 234 U.S.

the property of the bankrupt obtained within four months before bankruptcy by attachment, judgment, levy, or other legal or equitable process or proceedings." (Emphasis added.)

■ It should also be noted that when a Chapter XI case is converted to a bankruptcy case, the (bankruptcy) case " . . . shall be deemed to have been commenced as of the date of the filing of the first petition initiating a case under the Act and shall be conducted as far as possible as if no petition commencing a chapter case had been filed." Rule 122 of the Rules of Bankruptcy Procedure.

■ From what has been said, it is clear that from and after June 2, 1975, the aforesaid automatic stays effectively barred Campbell from instituting any proceeding against Siegen and from initiating any mortgage foreclosure against the mortgaged property. And, of course, Campbell could not accomplish through an attorney what he himself was enjoined from doing.

■ It follows that, inasmuch as the two remaining installments of the note had not matured prior to June 2, 1975, and the note had not then been placed in the hands of any attorney at law for collection, the provisions for the payment of an attorney's fee remained inoperative at the time that the automatic stays went into effect, even though the acceleration provisions may have been triggered by the filing of the Chapter XI proceeding. (The provision for the payment of attorney's fees is separate and distinct from, and independent of, the acceleration provision.)

Inasmuch as Campbell himself could take no action against Siegen or its property for the collection of the note, it is axiomatic that no attorney could take any such action for him, by suit or otherwise.

The first two installments of the note had been paid by the mortgage debtor, Siegen. The last two note payments were actually made by DMI and for reasons of its own, but not because it was legally obligated to pay such indebtedness, for DMI had not assumed Siegen's obligation for the payment of the indebtedness.

Obviously *DMI* has no legal obligation to Campbell for payment of any attorney's fees; and Campbell has no enforceable privilege against the debtor's property for attorney's fees, because no unqualified obligation for the payment thereof existed at the time proceedings were commenced in the Bankruptcy Court.

*In Matter of Atlanta International Raceway, Inc.,* 513 F.2d 546 (5th Cir. 1974), is apposite. That case presented the question of "whether a provision for attorney's fees in a promissory note can be enforced in a Chapter X reorganization under the Bankruptcy Act when the creditor has not attempted to fulfill the preconditions to validity of a lien for such fees until after the Chapter X petition has been filed, and in the face of a prohibitory injunction against the enforcement of all liens on the bankruptcy estate." The District Court answered this question in the negative and the Court of Appeals for the Fifth Circuit affirmed. There, as here, the note was not in default at the time the proceeding was commenced in the bankruptcy court; and there the Court said (at page 549):

263, 266–67, 34 S.Ct. 851, 852, 58 L.Ed. 1305 (1914); *Acme Harvester Co. v. Beekman Lbr. Co.,* 222 U.S. 300, 307, 32 S.Ct. 96, 99, 56 L.Ed. 208 (1911); 1 Collier ''2.62[1] (1968); MacLachlan, *Bankruptcy,* 205 (1956); Mussman & Riesenfeld, *Jurisdiction in Bankruptcy,* 13 Law & Contemp.Prob. 88, 92, 98 (1948). Insofar as such property is concerned, the rule is a substantially restricted restatement of the much quoted and applied *dictum* of *Mueller v. Nugent,* 184 U.S. 1, 14, 22 S.Ct. 269, 274, 46 L.Ed. 405 (1901), that 'the petition is a *caveat* to all the world, and in effect an attachment and

injunction.' Once the jurisdiction of the court has attached, any act or proceeding brought in another court to enforce a lien against such property cannot disturb the custody of the bankruptcy court without its consent. See *Isaac v. Hobbs Tie & Timber Co.,* 282 U.S. 734, 737, 51 S.Ct. 270, 271, 75 L.Ed. 645 (1931). The automatic stay is thus a logical corollary of the bankruptcy court's exclusive jurisdiction to deal with the property of the bankrupt within its custody from the date of bankruptcy." Advisory Committee's Notes to Rule 601(a).

"The bank does not contend that attorney's fees of $120,000 have been *earned* herein. What the bank seeks, therefore, is a $120,000 windfall to be added to its debt, *all as a consequence of the debtor being in Chapter X reorganization proceedings in bankruptcy.*" (Emphasis added.)

Significantly too, in that case, the Court noted: "The sending of the demand letter (during the pendency of the Chapter X proceeding) was '*an act or proceeding* to enforce a lien upon property of the debtor,' . . . and fell within the terms of the District Court's prohibitory injunction." (Emphasis added.)

In *Atlanta International Raceway*, the bank contended that *Security Mortgage Co. v. Powers*, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928), and *National Acceptance Company v. Zusmann*, 379 F.2d 351 (5th Cir. 1967), cert. den. 389 U.S. 975, 88 S.Ct. 478, 19 L.Ed.2d 469 (1967), were controlling, but the Court found them to be distinguishable and inapplicable.

In *Security Mortgage*, the mortgage creditor was seeking to have its claim to attorney's fees recognized and allowed as a part of the principal debt, which was secured by a lien upon the property sold.

The Court held that a claim for attorney's fees pursuant to a provision in a note similar to the note in *Atlanta International* was enforceable in a bankruptcy proceeding. However, in *Security Mortgage*, although the creditor's demand notice was sent after the petition was filed (as here), the demand was made upon the maker of the note, a debtor from whom the bankrupt had purchased the land securing the payment of the note; and, when the creditor asserted its claim against the proceeds realized at the sale of the property by the bankruptcy court, the debt (including an amount for attorney's fees) had already been reduced to judgment in a state court action against the *original* debtor (not the bankrupt).[8] The creditor was not seeking to *prove* its claim *in the bankruptcy proceeding*. Furthermore, no prohibitory injunction was in effect against enforcement of secured creditors' liens against the debtor's property.

Understandably, in *Security Mortgage*, the Court, in considering the genesis and evolution of the lien rights for attorney fees in that case, made the following observations (49 S.Ct. at p. 86):

"The lien was not inchoate at the time of the adjudication. It had already become perfect when the principal note and the loan deed securing it were given. Property subject to a lien to secure a liability still contingent at the time of bankruptcy is not discharged from the lien by the adjudication. The secured obligation survives; and if it is that of a third person is usually unaffected by the bankruptcy. When by the happening of the event the contingent liability becomes absolute, the lien becomes enforceable, though this occurs after the adjudication.

. . . . .

"The *contingent* obligation to pay attorney's fees was a part of the original transaction." (Emphasis added.)

In *Atlanta International*, the court not only distinguished *Security Mortgage* on its facts but also questioned the present efficacy of that case and noted (at p. 551, n.10):

---

**8.** In *Security Mortgage*, the Supreme Court reversed the decree of the Court of Appeals with directions to *remand* the case to the District Court for determination of (1) "whether or not the mortgage company gave the trustee notice of its election to accelerate the maturity of the principal; or notice that suit had been brought . . . If it failed to give the *trustee* notice of the election and of the intention to bring suit, we think that it is not entitled to the credit for attorney's fees . . ." and (2) whether or not the suit against the Hanson Company, the maker of the note, was brought, "not for the purpose of collecting the debt, but solely for the purpose of enhancing the amount which was obtainable without suit, through the lien upon the proceeds of the property." The Supreme Court ordered the Court of Appeals to direct the District Court " . . . to determine whether or not either of these two objections, which we hold meritorious if sustained by the facts is so sustained; and, if so sustained, the credit for attorney's fees *shall be disallowed.*" (49 S.Ct. at 87–88) (Emphasis added.) As hereinafter noted, the relevant state law, that of Georgia, makes a 10–day written notice a prerequisite to the enforcement of any contract to pay attorney's fees.

"It is not clear that *Security Mortgage* has continuing vitality even in straight bankruptcy cases. Under the new Bankruptcy Rules, effective October 1, 1973, the automatic stay provision formerly found only in Chapters X and XII has now been extended to Chapter XI and straight bankruptcy proceedings as well. Bankruptcy Rule 601; Collier's Trustees' and Receivers' Handbook § 1.002[4]."

Even if the facts of *Security Mortgage* were not so readily distinguishable from those of *Atlanta International* and the case at bar, it would seem that the applicability of *Security Mortgage* here has been substantially diminished, if not completely eliminated, by the Supreme Court's subsequent promulgation of the Bankruptcy Rules with their pervasive automatic stay provisions.

Assuming, *arguendo*, that the doctrine of *Security Mortgage* still obtains, despite the potent stay provisions of the Bankruptcy Rules, it is quite evident in the present case that neither of the two contingencies which could have matured the obligation for the payment of attorney's fees–that is, were the note to have been "placed in the hands of an attorney at law for collection," or were "sued on"–had occurred prior to the commencement of the arrangement/bankruptcy proceeding; and it is just as obvious that thereafter the happening of either of these occurrences was effectively precluded by law, that is, by the automatic stays. In other words, neither contingency which would have permitted the inclusion of attorney's fees in the ultimate *amount* of the secured obligation had occurred at the time the proceeding was instituted in the bankruptcy court, and neither of such contingencies can properly/legally be deemed to have occurred thereafter; neither of the stipulated events which could have caused the contingent liability for attorney's fees to become absolute can be regarded as having ever happened in the instant case. See *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946); and *In re New Haven Clock and Watch Company*, 253 F.2d 577 (2d Cir. 1958). The threshold question for the allowance of a claim is whether a claim exists; and this Court is of the firm conviction that the obligation for the payment of attorney's fees never attained maturity in this case.

*Zusmann*, supra, upon which Campbell heavily relies, began, as did the case at bar, as a Chapter XI case only to become a straight bankruptcy. Contracted attorney's fees were allowed. But before that arrangement proceeding began, the note was in default and the creditor had given the debtor notice of default and declared its intention of collecting attorney's fees as provided in the security agreement. There, too, as the *Atlanta International Court* noted (at p. 552):

" . . . (I)n *Zusmann*, unlike the present case, no injunction was entered against enforcement of creditors' claims[13] and there was no automatic stay provided by the Bankruptcy Act in that Chapter XI case."

"[13] . . . *If a stay or an injunction had been entered in Zusmann, automatically or otherwise, the creditor's lien would never have become valid*, because of the running of ten days (the relevant state law, that of Georgia, makes a 10–day written notice a prerequisite to the enforcement of any contract to pay attorney's fees) would have been suspended." (Emphasis added.)

It is our conclusion that whatever legal services may have been sought by and rendered to Campbell after the commencement of the arrangement/bankruptcy proceeding were not within the purview of the stipulation, because the circumstances which might have created an absolute (as distinguished from conditional) obligation to pay attorney's fees were by law automatically prohibited from happening.

The automatic stay invoked by the institution of the proceeding barred any collection effort by Campbell; and his subsequent placement of the note in the hands of attorneys was completely ineffectual and futile insofar as it purported to have caused the debtor's provisional obligation for the payment of attorney's fees to mature.

The potentiality of the maturity of the obligation for the payment of attorney's

fees was effectively suspended by the commencement of the proceedings in this Court. Ultimately, that potentiality was to vanish, because the stay was never lifted.

Accordingly, Campbell's claim for "attorney's fees in the amount of $61,633.42 as provided in said mortgage and note" must be rejected.

■ Our resolution of the question of whether the contracted attorney's fees lien is enforceable in this arrangement/bankruptcy proceeding is dispositive of this matter; and it is unnecessary for the Court to inquire into the value of the legal services that Campbell's attorneys may have rendered to him in this case, for the Court is powerless to make any award for such services. Indeed, no evidence was offered in support of the alternative claim for "reasonable attorney's fees"; and, suffice it to say, any such services as may have come to the attention of the Court were quite minimal. In our opinion, there was no need for any substantial legal services to pilot Campbell's secured claim through the judicially supervised course of this arrangement/bankruptcy proceeding–especially when DMI, a junior mortgagee, stood ready at all times to satisfy, and did in fact satisfy, Siegen's superior mortgage indebtedness to Campbell.

For the above and foregoing reasons, the Court concludes that the aforesaid promissory note in the original principal amount $493,067.40, the payment of which was secured by a special mortgage with vendor's privilege recorded on February 5, 1973, in Book 2507, Folio 86, of the Mortgage Records of the Parish of East Baton Rouge, State of Louisiana, has been fully paid, except for such additional amount of interest, if any, as may be due under the reservation set forth in Campbell's Exhibit No. 11 (letter from Walter B. Stuart, IV, to Michael J. Uter, dated March 25, 1977). Therefore, upon the payment of such interest, Campbell is directed to surrender said note to DMI as legal subrogee of the rights stipulated therein–in default whereof the Clerk of Court and Recorder of Mortgages for the Parish of East Baton Rouge, State

of Louisiana, will be authorized and directed to cancel and erase from the mortgage records of his office the inscription of the aforesaid mortgage and vendor's privilege securing the payment of said note.

Judgment will be entered accordingly.

