In re William Joseph TRUITT, Debtor,

Roger W. MOISTER, Jr., As Trustee in Bankruptcy for the estate of William Joseph Truitt, Plaintiff,

v.

The FARMERS BANK, et al., Defendants.

Bankruptcy No. 81–00359A.
Adv. No. 80–1358A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Nov. 5, 1981.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

This is before us on the Trustee's Motion to Pay Administrative Expenses and to Distribute. A hearing was held on June 16, 1981, after which the case was taken under advisement with counsel submitting supplemental briefs.

The Trustee is requesting administrative expenses to be paid from the proceeds of the sale of Debtor's residence free and clear of liens. The requested expenses are as follows:

 (a) Trustee's commission $ 1,110.14

 (b) Interim compensation to the attorney for the Trustee $10,000.00

 (c) Appraisal Costs to Farmer's Bank $ 70.00

The proceeds amounted to $36,507.00, and constitute the entire estate.

There are valid liens on the proceeds of approximately $80,000.00.

Trustee's commission and interim compensation for Trustee's attorney are the only expenses that are questioned. The appraisal fee has been paid and is not in issue.

The facts of the case are as follows. The debtor in this proceeding, William J. Truitt, ("Truitt") borrowed $32,000.00 from Citizens Trust Bank ("CTB") November 17, 1969. On February 12, 1970, Truitt executed a deed to secure debt to CTB for $1,000.00 and pledged his residence as additional collateral for CTB. It was to secure all past, present and future indebtedness owed by Truitt to CTB. Truitt at various times overdrew his account at CTB and became further indebted to the Bank. There followed a continuing dispute with CTB over the amounts due from Truitt to CTB.

In July of 1976 Truitt executed a loan deed to Farmer's Bank of Union Point ("Farmer's") for $10,883.47. In February of the following year he executed another loan deed to Farmer's in the amount of $30,000.00 on the same property securing CTB's loans.

During the 1970's Truitt's property became further encumbered by various judgments, fi. fas., a tax lien, and others. Stemming from his dispute with CTB he has not made any payments to them, and has also allowed his loan to Farmer's to fall into default.

Truitt filed for bankruptcy on February 5, 1980. As a result of the dispute with CTB, the property was unmarketable as it was unclear what the status of the various asserted liens against the property were. CTB and Farmer's had reached a settlement between them to resolve the disputed claims and free up the property. The Trustee, seeing a potential equity in the estate for the unsecured creditors, could not reach an agreement with CTB and Farmer's in relation to their settlement.

The Trustee thereafter instituted an adversary proceeding to determine the validity, extent and priority of the CTB lien, in order to resolve the dispute and make the property marketable. The Trustee then instituted an adversary proceeding to sell the property free and clear of liens with valid liens attaching to the proceeds.

The property has been sold, with net proceeds of $36,507.00 subject to valid liens. This Court determined that the lien of CTB was valid in the amount of $33,098.50. Total liens against the proceeds are approximately $80,000.00.

## DISCUSSION

The Trustee has moved to collect $11,-110.14 in commission and interim compensation. Since the only source of compensation could be the proceeds from the sale free and clear, the question in the case becomes: To what extent can the Trustee collect these expenses from the proceeds arising from the sale of totally secured property?

■ The trustee is not entitled to collect his commission from secured property administered in bankruptcy. See *Gugel v. New Orleans*, 239 F. 676 (5th Cir. 1917).

The remaining issue is how much of the cost of selling the property can be charged against the proceeds. Section 506(c) (11

U.S.C.) of the Code allows these expenses of sale to be collected "... to the extent of any benefit to the holder of such claims."

In the cases under the Old Act, benefit meant, in those situations where the Trustee wished to collect part of the proceeds from the sale of encumbered property for the estate, the cost of preserving and/or selling the property. *Gugel v. New Orleans National Bank*, 239 F. 676 (5th Cir. 1917), *In Re: Hansen & Birch*, 292 F. 898 (D.C.N.D. Ga.1923), *Lerner Stores v. Electric Maid Bake Shop*, 24 F.2d 780 (5th Cir. 1928), *Odendahl v. Pokorny Realty Co.*, 76 F.2d 271 (5th Cir. 1935), *Maxcy v. Walker*, 119 F.2d 535 (5th Cir. 1941), *In Re: Empire Granite Co.*, 42 F.Supp. 450 (D.C.M.D.Ga. 1942), *Reconstruction Finance Corp. v. Rhodes*, 214 F.2d 606 (5th Cir. 1954). The cost of judicial foreclosure in a state court was usually the measure used by the courts to assess costs of selling the property against the proceeds of that sale. It was felt by the courts to be equitable to charge a secured party with the amounts he would have incurred had he been forced to foreclose on his own, rather than have the trustee sell the property in Bankruptcy Court. As was said in *Gugel* (cite supra)

> "If there is a real or apparent equity in the property for the estate, and so reasonable grounds for administering it in bankruptcy the lienholder should be charged with the reasonable costs of such proceedings in the bankruptcy court as are appropriate to foreclosing the lien and selling the incumbered property, but not the commissions and expenses of the officers of the bankruptcy court incurred in the general administration of the estate in Bankruptcy, from which the lienholders receive no benefit." at 679.

 Where a trustee sees in encumbered property an equity, if he attempts to sell that property in the bankruptcy court, he and the general creditors, for whom this action is generally undertaken should bear the risk of error. In *In Re: Hansen & Birch* (cite above) it was said:

> "A bankruptcy proceeding is for the administration and not the dissipation of the estate. It is undertaken primarily for the benefit of general creditors and they in general control it. The trustee is chosen by them and is their representative, and litigation prosecuted by him is in their behalf. It was intended that the creditors, as business men, should see to their being a businesslike administration. They generally turn the matter over, however, to lawyers and the court, with frequently bad results, for often neither lawyers nor courts are economists. The bad judgment of the trustee in litigation or otherwise, which results in excessive expense, must be visited upon the general creditors or the fund belonging to them, unless so reprehensible as to fall upon the trustee himself and his legal advisor as resulting from a breach of their duty. The expenses cannot generally be justly put, in whole or in part, upon a successful opponent. The exception is the equitable one only that where the contention is over property in the control of the court, such expense as was necessary for its preservation, or resulted in *benefit* to the successful litigant, may be charged against it and him. But the charge so made is to be measured, not by the outlay, if that be unreasonable, but by the necessity and the benefit involved.... So the reduction of the property to cash and the foreclosure of the lien resulted in a benefit to the lienor, but only to the extent that it saved him the expense necessarily incident to a foreclosure in this or another court. Where, as here, the lienor does not seek the aid of the bankrupt court, but is proceeded against in invitum, he is, aside from the cost of preserving the property, just dealt with, chargeable with no costs of administration beyond the benefit to him measured by this necessary cost of foreclosure. *Gugel v. New Orleans Natl. Bank*, 239 Fed. 676, 152 C.C.A. 510." (Emphasis added)

And in *Maxcy v. Walker* (cite above): "It is apparent the property did not bring enough to satisfy the mortgage in full. It is settled in this circuit by numerous decisions that in such event the mortgage holder cannot be compelled to contribute to the general fund of the estate more than the reasonable cost

of selling the encumbered property, usually to be measured by the actual cost in a state court of foreclosing the lien." at page 536.

Therefore, this Court finds that, because of the difficulty of getting the disputes resolved and rendering the property once more marketable, that it is equitable to charge against the proceeds the reasonable costs of selling the property. In light of the difficulty involved, we find that the cost of simple foreclosure is not enough. CTB was spared all the costs of resolving the long-standing dispute over the property that it would have incurred had it attempted to foreclose. Therefore we find that those costs should be charged against the proceeds. This Court feels that compensation in the amount of $2,500.00 would be appropriate in this case, considering, as described above, the unusual circumstances of the case. For these reasons, it is

ORDERED that Trustee's Motion to Pay Administrative Expenses be granted in the amount of $2,500.00.

It is further

ORDERED that the remaining proceeds be distributed in the following amounts:

| TO: | Citizens Trust Bank | $ 33,098.50 |
|---|---|---|
| | Humble Oil | 491.19 |
| | Farmers Bank | 417.31 |