**In re James C. HARDY, individually, and d/b/a JCH Investments, JCH Designs For Living & JCH Management Services, Debtor.**

**Bankruptcy No. Bk–83–00093.**

United States Bankruptcy Court, N.D. Oklahoma.

April 30, 1984.

James C. Pinkerton of the firm Pinkerton & Pinkerton, Tulsa, Okl., for debtor in possession.

Leonard Pataki of the firm Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl., for Farmers Bank & Trust Co.

G. Blaine Schwabe, III of the firm Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., for Metropolitan Life Ins. Co.

MEMORANDUM DECISION
AND ORDER

RICHARD L. BOHANON, Bankruptcy Judge.*

This matter comes on for consideration upon the Application to Assess Costs filed by the Chapter 11 debtor in possession. The application seeks to recover the sum of $154,967 as the reasonable, necessary cost and expenses of preserving secured property as authorized pursuant to 11 U.S.C. § 506(c). Objections to the debtor's application were made by Metropolitan Life Insurance Company and Farmers Bank and Trust Company, both holding first and second mortgages respectively against the subject property.

A hearing was held in this matter and upon stipulation of all parties it was agreed that any assessment obtained by the debtor would necessarily be junior to the mortgage of Metropolitan. Consequently, the objection of Metropolitan was resolved and the Court proceeded to address only the Farmers Bank objection. In this regard, both the debtor and Farmers Bank further stipulated that any amount found properly recoverable under § 506(c) would constitute a lien upon the property in favor of the debtor-estate.

The debtor is the owner of an office building commonly referred to as the Dalco Building. When the building was purchased a mortgage existed in favor of Metropolitan Life Insurance Company for approximately $978,000 which the debtor assumed as part of the purchase price. The debtor also borrowed the sum of $1,525,000 from Farmers Bank to finance the remaining purchase balance. As a result of this transaction, the debtor granted Farmers Bank a second mortgage on the property.

The debtor filed for relief under Chapter 11 of the Code in January, 1983, and has continued to operate as debtor in possession throughout the proceedings. The debtor's plan of reorganization calls for mortgage holders to receive either a deed to the premises in lieu of foreclosure or they may foreclose on the property subject to any administrative expenses which may be imposed *in rem* pursuant to § 506(c).

The Court finds no evidence of misapplication of rental funds on the premises and that all such funds received were disbursed towards upkeep and operation of the subject premises. We are also persuaded that the debtor undertook certain capital improvements upon the building which resulted in preservation of the property and that no competent evidence is presented which establishes that the building may have been operated more efficiently or economically. Finally, the evidence is persuasive that it would not have been prudent under the circumstances for the debtor to have ceased operation of the building.

■ The matter for determination involves interpretation of the language found in 11 U.S.C. § 506(c):

"The trustee may recover from property securing an allowed claim the reasonable, necessary cost and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

That section of the Code actually sets forth three requirements before the debtor in possession may recover from secured property. First, the costs and expenses must have been reasonable and necessary; second, the costs and expenses must have been incurred for the purpose of preserving or disposing of the secured property; and thirdly, there is a limit upon any recovery based upon the extent of benefit to the holder of the secured claim. *In re Afco Enterprises, Inc.*, 35 B.R. 512 (Bkrtcy.D. Utah 1983). Moreover, absent some showing of a demonstrated benefit to the creditor, the debtor may not recover even though the other elements may have been established. *In re Afco Enterprises, Inc., supra; In re Korupp Association, Inc.*, 30 B.R. 659 (Bkrtcy.D.Me.1983); *In re B & L Enterprises, Inc.*, 26 B.R. 220 (Bkrtcy.W. D.Ky.1982); *Dozoryst v. First Financial Savings and Loan Association of Down-*

* United States Bankruptcy Judge for the Western District of Oklahoma, sitting by designation.

ers Grove, 21 B.R. 392 (D.C.N.D.Ill.1982). The debtor has the burden of proving that the secured party has been conferred a benefit by the actions undertaken. *Matter of Trim-X, Inc.*, 695 F.2d 296 (7th Cir. 1982); *Dozoryst v. First Financial Savings and Loan Association of Downers Grove, supra.*

Traditionally, administrative expenses have not been allowed charged against a secured party since the trustee or debtor in possession would not typically act in the interest of secured creditors, but rather on authority of the Court and general creditors. *See e.g., Matter of Trim-X, Inc., supra; In re Tyne*, 257 F.2d 310 (7th Cir. 1958). However, an exception to this general rule has been codified at § 506(c) where expenses of preservation are incurred which primarily are for the benefit of the secured party or when that party consents to such expenses. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 68, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5854; H.R.Rep. No. 595, 95th Cong. 1st Sess. 357, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6313. *See also Matter of Trim-X, Inc., supra.* We are not unmindful, however, that § 506(c) was never intended by Congress to become a substitute means of recovery for fees and expenses which more appropriately should be borne by the estate. *In re Codesco, Inc.*, 18 B.R. 225 (Bkrtcy.S.D.N.Y.1982).

■ With these various principles in mind we proceed to analyze the evidence before us in light of the administrative claim made by the debtor. At the hearing the debtor introduced evidence that various capital improvements were made on the building including installation of an air-conditioning system. The total cost of these improvements were $129,517, and these improvements will be transferred once this property is conveyed. The uncontroverted testimony was that the cost of replacing the air-conditioning unit was $90,680 and without this replacement the building would not have been habitable. Through various other improvements of the premis-

es the debtor testified that occupancy rate increased to some 80%. These capital improvements helped preserve a going concern and therefore, we hold that preservation of this going concern value constitutes a benefit to the secured creditor. *In re Afco Enterprises, Inc., supra; In re World of English, N.V.*, 21 B.R. 524 (Bkrtcy.N.D.Ga.1982); *In re Jim Kelly Ford of Dundee, Ltd.*, 14 B.R. 812 (N.D.Ill. 1980).

■ The debtor also seeks recovery for maintenance expenses in the amount of $19,059 and legal fees in the amount of $6,400. However, we find the proof lacking as to the material and demonstrated benefit to the secured creditor with respect to these items. Although it may be possible in the general sense that these expenses were of some benefit to the creditor, we will not speculate as to the quantifiable benefit since § 506(c) does not make the secured party the guarantor of administrative expenses. *In re Korupp Association, Inc., supra.* This section demands quantitative proof, not theoretical statements of potential benefits. In exercising our discretion [1] in allowing recovery in this matter, we find no particular benefit to the secured creditor with regard to the maintenance expenses where, as here, not only did the debtor entity perform much of the maintenance services, but also utilized rental funds as part of the on-going operating revenue to partially pay for this expense. Finally, as to the legal fees we simply were not provided the detailed explanation of what these fees constituted other than a single example referring to a suit to cancel a lease. However, like the allegations asserted to support recovery of maintenance cost, we find the necessary conferred benefit too remote and attenuated for recovery under the limited provisions of § 506(c). When the debtor elects to not abandon property but holds it in expectation of selling at some surplus value certain risk of that decision necessarily accompanies it. Consequently, the administrative claim for maintenance expenses and legal fees will be disallowed for the reasons stated.

---

1. *See e.g., In re Colonial Realty Investment Company*, 516 F.2d 154, 159 (1st Cir.1975); *First*

*Western Savings and Loan Association v. Anderson*, 252 F.2d 544, 548 (9th Cir.1958).

Having found that the debtor may partially recover his administrative expenses pursuant to § 506(c) we find Farmers Bank argument that they should not have priority over its secured claim to not have merit. To hold otherwise would effectively nullify the effect, intent and spirit of that section. The exception of § 506(c) is premised on the fact that there has been a fair exchange where the indubitable equivalent of the conferred benefit is found in the money expended by the debtor. Absent a showing of why this administrative claim should be subordinated we find no authority to support the position urged by the Bank. We find that the correct reading of § 506 makes the Bank's lien subject to any allowed § 506(c) claim except in those instances where the collateral is sufficient to satisfy 506(c) claims notwithstanding the creditor's lien. *See* 3 *Collier on Bankruptcy*, ¶ 506.6 at 506–47 (15th Ed. 1983); *compare In re Dye Master Realty, Inc.*, 15 B.R. 932, 935 (Bkrtcy.W.D.N.C.1981) (liens of Bank subject to any § 506(c) expenses) *and In re Previs*, 31 B.R. 208 (Bkrtcy.W.D. Wash.1983) (trustee entitled to recoup his 506(c) expenditures with respect to secured property). The Bank cites the Court to *In re Chateau Royale, Ltd.*, 6 B.R. 8 (Bkrtcy. N.D.Fla.1980) and *In re H.P. Tool Manufacturing Corporation*, 12 B.R. 600 (Bkrtcy.E.D.Pa.1981), for the proposition that payment of § 506(c) claims occur only after satisfaction of its mortgage. However, upon analysis it appears these cases are inapposite and misapplied for our purposes here. These cases would be helpful in determining total recovery of claims when § 506(b) considerations are at issue and the relationship of § 506(b) and (c). However, that is not the question before the Court and any determination here would be premature since this property has not been sold and the proceeds may or may not exceed the mortgages. Finally, the Bank points to the language in *In re Truitt*, 15 B.R. 169 (Bkrtcy.N.D.Ga.1981), that "[w]here a trustee sees in encumbered property an equity, if he attempts to sell that property in the bankruptcy court, he ... should bear the risk of error." *Id.* at 171. Without attempting to explain this language we only note that the bankruptcy court in *Truitt* evidently resolved that there had been benefits conferred upon holders of the secured claims in light of § 506(c) for it held:

> "we find that the cost of simple foreclosure is not enough. [The creditor] was spared all the costs of resolving the longstanding dispute over the property that it would have incurred had it attempted to foreclose. Therefore, we find that those costs should be charged against the proceeds." *Id.* at 172.

Consequently, for the reasons previously mentioned we conclude that the administrative expenses allowed pursuant to § 506(c) are not subject to the satisfaction of the claims of Farmers Bank absent proceeds in excess of the mortgages upon the property.

Accordingly, it is ordered that the debtor shall be awarded and may recover as administrative expenses pursuant to § 506(c) the sum of $129,517;

Further, the administrative expense award is not subject to the satisfaction of the claim of Farmers Bank unless such proceeds of sale shall be in excess of the mortgages thereupon. Under the latter circumstances administrative expenses shall be recovered first from excess proceeds to the extent of such expenses until the same are satisfied.

United States Bankruptcy Court, E.D. Tennessee.